18747

Wendell JONES, Respondent, v. Mark GARNER and the Sun-News, Appellants

(158 S. E. (2d) 909)

*Messrs. McCaskill & Thompson,* of Conway, and *Robinson, McFadden & Moore,* of Columbia, *for Appellant,*

*Messrs. Stevens & Holt,* of Loris, *for Respondent,*

January 9, 1968.

LEWIS, Justice.

This action for libel arose out of an alleged defamatory publication concerning plaintiff in The Sun-News, a weekly newspaper published at Myrtle Beach, South Carolina. The Sun-News carried in its issue of July 29, 1965 a front page news article in which the fact was reported that the Internal Revenue Service had filed income tax liens against plaintiff, other named members of his family, and four corporations in which they were stockholders. The preceding headline, however, stated that "tax evasion charges" had been filed against those named and the first paragraph of the article stated that they had been charged with evading payment of taxes. The plaintiff, alleging that reference in the headline and news article to the filing of "tax evasion charges" against him was libelous, brought this action against the owner and publisher of The Sun-News to recover damages allegedly sustained by him from such publication. The defendant denied the libelous character of the article, and alleged that, when the terminology used was taken in context and interpreted in the light of common usage, it was an accurate report of an item of general news.

Upon the trial, timely motions of the defendant for nonsuit and directed verdict were denied and the issues submitted to the jury, resulting in a verdict for plaintiff in

the sum of $10,000 actual and $5,000 punitive damages. Defendant has appealed from the denial by the lower court of his post trial motions for judgment notwithstanding the verdict and, in the alternative, for a new trial. We have concluded that defendant's motion for judgment notwithstanding the verdict was properly denied, and that his motion for a new trial should have been granted.

The appeal from the denial of the motion for judgment notwithstanding the verdict is based upon the contention by defendant that the trial judge should have directed a verdict in his favor (a), generally, because the publication (1) was not defamatory of plaintiff and (2) was made within a qualified privilege without malice in fact; and (b), particularly, as to punitive damages because there was no evidence to sustain such award.

Plaintiff's complaint alleged, in substance, that the references to tax evasion in the headline and news article charged him with fraud and dishonesty in connection with his income tax transactions with the Federal Government, that such charged the commission of a crime, and was so understood by those reading the publication. The issue of whether the publication was susceptible of the defamatory meaning alleged in the complaint was submitted by the trial judge to the jury to determine. Our first inquiry is whether he erred in doing so.

> If the words used are unambiguous and incapable of an innocent meaning, the court may declare them libelous as a matter of law.

However, the alleged defamatory words used "must be given their ordinary popular meaning, and if they are susceptible of two meanings, one slanderous and the other innocent, it must be left to the jury to determine from all of the circumstances attending the publication, in what sense the defendant used them." *Nettles v. MacMillan Petroleum Corporation,* 210 S. C. 200, 42 S. E. (2d) 57; *Duncan v. Record Pub. Co.,* 145 S. C. 196, 143 S. E. 31;

*Williamson v. Askin & Marine Co.,* 138 S. C. 47, 136 S. E. 21; *Davis v. Niederhof,* 246 S. C. 192, 143 S. E. (2d) 367.

It is also well settled that "the intent and meaning of an alleged defamatory statement must be gathered not only from the words singled out as libelous, but from the context; all of the parts of the publication must be considered in order to ascertain the true meaning, and words are not to be given a meaning other than that which the context would show them to have." 33 Am. Jur., Libel and Slander, Section 87.

The controversy here concerns the meaning to be attributed to the reference to "tax evasion" in the headline and article. The following headline preceded the article: "TAX EVASION CHARGES AMOUNTING TO $1,971,174 FILED AGAINST JONES FAMILY; FOUR COMPANIES." The first paragraph of the article stated: "Three Myrtle Beach brothers, their wives and the father and mother of the men have been charged with evading the payment of $1,971,174.75 in income taxes, the Internal Revenue Service said today." The article then reports the filing by the Internal Revenue Service of income tax liens against the various members of the Jones family, including the plaintiff. With particular reference to the plaintiff, the following was reported: "Wendell E. Jones, transferee, is charged by the Internal Revenue Service of owing $71,727.99 from 1954 through 1960. Wendell E. and Ann Jones are charged with a tax bill of $12,178.40 for 1959 and 1960." The article concluded with a statement attributed to the District Director of Internal Revenue Service that "it has therefore been considered necessary for the Revenue Service to take certain steps including the filing of tax liens so as to assure ultimate satisfaction of federal taxes due and unpaid."

The only reference in the publication to tax evasion was in the headline and the first paragraph of the article. The remainder of the article correctly reported the filing of the

various tax liens to cover taxes due and unpaid by the various parties.

While a headline, which precedes a correct and true article, may within itself be libelous, we do not think that the headline in this case falls within that category, but must be construed in connection with the article it precedes to determine whether it had a defamatory meaning. 33 Am. Jur., Libel and Slander, Section 88.

The term "tax evasion" is susceptible of both a defamatory and an innocent construction. In the defamatory sense, it is a crime denoting concealment and an attempt to escape by wrongdoing the payment of taxes due the government. Title 26, U. S. C. A. Section 7201. In the non-defamatory sense it means tax avoidance— that is, taking advantage of lawful tax avoiding devices with the objective of minimizing the tax burden. If the intent and meaning of the publication was to report that plaintiff had been charged with the crime of tax evasion, it would be actionable. If on the other hand the publication conveyed the meaning that the Internal Revenue Service had simply filed tax liens to assure the payment of taxes due, it would not be actionable.

Since the alleged defamatory words were susceptible of both a defamatory and an innocent meaning, the trial judge properly left it to the jury to determine from all of the circumstances the sense in which they were published and understood.

The defendant takes the position, however, that the plaintiff elected to proceed on the theory that the alleged defamatory statements were libelous *per se* and that the court can *only* look to the written article to determine if the statements made were defamatory.

The agreed statement in the transcript contains the following: "The plaintiff elected to proceed on libel *per se.*" An examination of the record fails to disclose the significance of such agreement. We are inclined to the view that

the proper interpretation is that the plaintiff was proceeding on the theory that the article, under all of the circumstances, imputed to the plaintiff the commission of a crime and was therefore actionable. In any event, the record reveals no sound basis upon which to give the so-called "election" any conclusive effect in our determination of the issues.

The defendant also takes the position that, irrespective of the defamatory character of the publication, it was qualifiedly privileged and there was no evidence of actual malice or malice in fact.

Fair and impartial reports in newspapers of matters of public interest are qualifiedly privileged. Federal tax liens had been filed on the public records against the plaintiff as a result of action taken by the Internal Revenue Service in the administration of the income tax laws. Since the occasion for the publication here involved was a news report of what the public records showed with regard to the filing of tax liens against plaintiff, such was a qualifiedly privileged occasion.

However, the privilege attending the publication of a news report arises by reason of the occasion of the communication, and a communication or statement which abuses or goes beyond the requirement of the occasion, loses the protection of the privilege. *Cullum v. Dunn & Bradstreet, Inc.,* 228 S. C. 384, 90 S. E. (2d) 370. The privilege extends only to a report of the contents of the public record and any matter added to the report by the publisher, which is defamatory of the person named in the public records, is not privileged.

The record shows conclusively that the only steps taken by the Internal Revenue Service consisted of the filing of tax liens against the plaintiff and that no criminal charges, or charges of fraud, in connection with such matter were ever made by the Internal Revenue Service or reported by it to the defendant. Therefore, under the record now before us, if the intent and meaning of the

publication was that plaintiff had been charged with a crime in connection with his income tax transactions, such would be a false report of the content of the public records and would not be within the protection of the privilege. In other words, under this record, assuming the libelous character of the publication, the plea of privilege would not, as a matter of law, be available to defendant because admittedly the public record contained no fact upon which the alleged defamatory statement could be based. Of course, if the article had no such defamatory meaning, then defendant would not be liable in any event.

The further position is taken that there was no evidence to sustain an award of punitive damages.

Malice, in actions for libel or slander, is of two kinds: implied malice or malice in law, and actual malice or malice in fact.

"Malice in law, or legal malice, is a presumption of law and dispenses with the proof of malice when words which raise such presumption are shown to have been uttered. This form of malice is not necessarily inconsistent with an honest or even laudable purpose and does not imply ill will, personal malice, hatred, or a purpose to injure." 33 Am. Jur., Libel and Slander, Section 111. Also, 53 C. J. S., Libel and Slander, § 2.

While implied malice will support an award of actual damages, punitive damages cannot be recovered in the absence of proof of actual malice.

Actual malice or malice in fact is not presumed and must be proved. Actual malice means that the defendant was actuated by ill will in what he did, with the design to causelessly and wantonly injure the plaintiff; or that the statements were published with such recklessness as to show a conscious indifference toward plaintiff's rights. See: *Rogers v. Florence Printing Co.*, 233 S. C. 567, 106 S. E. (2d) 258.

The question then, assuming the article to be libelous, is whether there was evidence reasonably sustaining an in-

ference that the defendant in making the publication was actuated by ill will toward the plaintiff or acted so recklessly as to indicate a conscious indifference to his rights.

We think that the testimony presented a jury issue as to whether the publication was maliciously made.

In its defamatory sense, the article reported that the plaintiff had been charged with the commission of the crime of tax evasion. Under such construction, it cannot be held as a matter of law that the publication was not so recklessly made as to indicate malice, in view of the admitted fact that no such criminal charge was ever made by the Internal Revenue Service, or reported by it to the defendant, or contained in the public records inspected by defendant. While there are strong circumstances negativing the existence of actual malice, the reasonable inferences to be drawn from the evidence were correctly left by the trial judge to the jury to resolve.

The motion of the defendant for a directed verdict was properly denied.

However, a new trial must be granted because of errors in the charge to the jury. These errors are so patent as to require little discussion.

The jury was instructed that the refusal to retract libelous statements could be considered as evidence of malice and that, where truth is interposed as a defense to the making of statements charging another with the commission of a crime, the failure to establish such defense may be considered a strong circumstance tending to establish malice. Reference was also made in the charge to the law of libel as applied to public officers.

The record conclusively shows that there was no request, and therefore no refusal, to retract the alleged libelous statement; truth as a defense to libel was not pled; and plaintiff was not a public officer. These issues were not involved in the case and, under the circumstances, the instructions thereabout constituted prejudicial error requiring a new trial.

Since a new trial is being granted, the other questions raised in the appeal need not be considered.

Reversed and remanded for a new trial.

Moss, C. J., and BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.