21705

Carroll D. PADGETT, Jr., Respondent, The SUN NEWS and The Sun Publishing Company, Appellants. James P. STEVENS, Jr., Respondent, v. The SUN NEWS and The Sun Publishing Company, Appellants. (two cases).

(292 S. E. (2d) 30)

*McCutcheon & McCutcheon* of Conway, *Robinson, McFadden, Moore & Pope*, Columbia, and *Harold B. Wahl*, Jacksonville, Fla., *for appellants.*

*J. M. Long, Jr.*, Myrtle Beach, *for respondents.*

May 19, 1982.

LEWIS, Chief Justice:

This appeal is taken from judgments entered upon consolidated jury trial of two actions for defamation. In substantially identical complaints, the respondents, Carroll D. Padgett, Jr., and James P. Stevens, Jr., alleged that three articles published by the appellant newspaper between December 1976 and March 1977, were libelous in various particulars. Neither of these are public officials or public figures. Actual and punitive damages were awarded each plaintiff by the jury. Motions by the defendant newspaper for directed verdicts were made at conclusion of the evidence and denied. We reverse.

This litigation has its background, in part, in a political campaign in Horry County, South Carolina, in 1976, in which State Senator James P. Stevens (father of one of Plaintiffs-Respondents) was a candidate for re-election. He was opposed by John Reaves, who, at that time, was City Attorney and Recorder for the town of Loris. The campaign was "very heated" and at one campaign meeting a physical encounter occurred between Senator Stevens and Reaves, resulting in the bringing of criminal charges against the Senator by Reaves. The criminal proceedings attracted considerable public

attention, with respondent Padgett, an attorney, representing Senator Stevens. During the same period, Senator Stevens and his son (Stevens, Jr.) were attorneys for Reaves' wife in a divorce action.

The newspaper articles complained of in the present actions were published at a time when the respondents were personally parties to litigation with Reaves and were reports of that litigation. This litigation began with the institution by Reaves of two actions on December 6, 1976 in the Court of Common Pleas for Horry County. In one of these, Senator Stevens and his son (James P. Stevens, Jr.), along with one other (Winston W. Vaught), were named as defendants. This action was instituted by the service of a Summons (complaint not served), with the nature of the cause of action endorsed on the face of the Summons as "abuse of process." The other action was also commenced by the service of a Summons (complaint not served), in which Senator Stevens, his son (Stevens, Jr.), and Padgett were named as defendants. On the face of this Summons was endorsed, "cause of action: Alienation of affection and criminal conversation." Both Summonses, after service, were filed in the office of the Clerk of Court for Horry County on December 6, 1976.

In the December 11, 1976 issue of appellant Sun News, after the filing of the foregoing Summonses but before the filing of the complaint in the action, an article was published which stated that a summons was filed in the Horry County Court of Common Pleas naming former Senator James P. Stevens, his son, James P. Stevens, Jr., and one other (Winston W. Vaught) as defendants in an action alleging abuse of process. The newspaper article then continued:

> Another summons filed the same day named the two Stevenses and Loris attorney Carroll D. Padgett as defendants in an action alleging alienation of affection and criminal conversation.
>
> No complaints were filed with the Summons. However, Reaves stated in the legal papers that he intends to file the complaints at a later date.

It is undisputed that the mentioned newspaper article accurately reported the contents of summonses which had been filed on the public records of Horry County.

After the service of the Summons in the action designated as one for alienation of affection and criminal conversation, Reaves filed a complaint in the office of the Clerk of Court on December 30, 1976, which specifically alleged that James P. Stevens, Sr., has had criminal conversation with Reaves' wife and that the defendants (Senator Stevens, Stevens, Jr., and Padgett) deliberately contrived to alienate her affections through the various acts set forth in the complaint.

Following the filing of the above complaint, the appellant published an article in its January 6, 1977, issue which stated that Senator Stevens, his son and law partner, and Loris attorney Padgett were "cited for alienation of affection in the legal papers filed by Loris attorney John L. Reaves." The article also stated:

> The papers also allege that the former Horry County senator 'has had criminal conversation' with Reaves' wife Gloria K. Reaves.
> In the suit, Reaves alleges that the defendants, particularly the elder Stevens, began meeting with Gloria Reaves in early 1975 'to scheme a plan to separate the plaintiff from his wife and plan lawsuits against other persons.'
> According to Reaves' allegations, the purpose of the planned lawsuits was to 'blackmail a medical doctor into paying James P. Stevens, James B. Stevens, Jr., and the wife of the plaintiff the sum of $500,000.'

The article then referred to the December 6 summons in which the "two Stevenses and Padgett" were named as defendants and "identified the cause of action as alienation of affection and criminal conversation." Immediately following was printed the statement:

> Neither the younger Stevens nor Padgett were cited for criminal conversation in the complaint Reaves filed later.

As in the case of the previous article concerning the filing of the Summonses, it is undisputed that the article of January 6 was a fair and accurate report of the contents of the complaint filed in the office of the Clerk of Court.

On March 28, 1977, another action was instituted by Reaves against the same defendants by the service and filing of a Summons and Complaint in which Reaves alleged that the defendants (James P. Stevens, Sr., James P. Stevens, Jr., and Carroll D. Padgett, Jr.) had advised, procured and stirred up Gloria K. Reaves (Reaves' wife) to commence several lawsuits against him without reasonable or probable cause, and that Reaves was damaged as a result of the "abovementioned actions of barratry and champerty by the defendants."

In the issue of March 29, 1977, an article was published in the respondent Sun News which stated Senator Stevens, his son and law partner James P. Stevens, Jr., and Loris attorney Carroll D. Padgett, Jr., "have been sued for encouraging lawsuits and sharing in their proceeds." The article then stated:

> In legal papers filed Monday in the Horry County Courthouse, Reaves accused the three attorneys of barratry and champerty in connection with a marital dispute involving Reaves and his estranged wife Gloria K. Reaves. Barratry is the offense of frequently exciting or stirring up suits or quarrels. Champerty is a sharing in the proceeds of a litigation by one who promotes it or carries it on.

As with the other articles, the article of March 29, 1977, was also a fair and accurate report of the contents of the complaint on file in the office of the Clerk of Court.

None of the actions instituted against respondents were ever brought to trial.

Beyond dispute the Summons is an indispensable part of the judicial proceeding in this State. Civil actions are commenced "in the courts of record in this State" by the service of a summons (Code Section 15-9-10), and may be commenced without the service or filing of the complaint (Code Section 15-13-230). Code Section 15-9-1000 requires that "the summons and the several pleadings in an action shall be filed with the clerk within ten days after the service thereof respectively;" and at least fourteen days before the beginning of a term of court, the plaintiff shall file in the clerk's office the summons and complaint in the cause, "endorsing thereon the nature of the issue" (Code Section 15-25-10).

It is, therefore, clear that the Summons (complaint not served), as well as the complaints, in the prior actions brought against respondents, were all required by law to be filed with the clerk of court and, when so filed, became public records in the course of a judicial proceeding. *Lybrand v. The State Co.*, 179 S. C. 208, 184 S. E. 580.

As heretofore pointed out, it is an uncontradicted fact that the articles published by appellant were fair and accurate reports of the contents of the documents filed in these judicial proceedings and, as such, are privileged, unless actual malice is shown. *Jones v. Garner*, 250 S. C. 479, 158 S. E. (2d) 909; *Lybrand v. The State Co.*, supra.

As of December 11th, the only document on file was the Summons which did name the respondents as defendants and which did speak of a cause of action for criminal conversation. It is true that the respondents were not charged with criminal conversation in the *Complaint* which was subsequently filed approximately twenty-four (24) days later, but were charged with alienation of affection. This does not make the publication of December 11th "incorrect" as of that time, however. Respondent Stevens, Jr. seems to have recognized this fact when, in his own testimony, he stated that he saw no difference in the defamatory nature of the two causes of action.

When appellant accurately published the contents of the Summons, it had a right to do so; and its actions in so publishing the contents of the summons cannot properly be judged in the light of the subsequently filed complaint, even if we, in disagreement with respondent Stevens, Jr. assume that there was a difference in the charges made in the Summons and the subsequently filed complaint.

As stated in *Alexandria Gazette v. West*, 198 Va. 154, 93 S. E. (2d) 274 (1956):

> Privilege in reporting a judicial record is not measured by the legal sufficiency of the charges made in the judicial proceedings or the truth of those charges. The privilege consists of making a fair and substantially true account of the particular proceeding or record.

The same principle prompted our holding in *Herring v. Retail Credit Co.*, 266 S. C. 455, 224 S. E. (2d) 663 that

> Court proceedings are public events and the public has a legitimate interest in knowing the facts in them. Traditionally court records have been public records, generally open for public inspection. Fair reports of what is shown on public records may be circulated freely and without liability. . . .

In addition, this record is devoid of any evidence upon which to base a finding of actual malice. We recently defined actual malice as follows:

> We believe actual malice is established when reporters and publishers depart from responsible standards of investigation and print articles on the basis of an admittedly unreliable source, without further verification, *Stevens v. Sun Publishing Co.*, 270 S. C. 65, 240 S. E. (2d) 812.

Actual malice means that appellant acted "with ill-will towards the plaintiff, or that it acted recklessly or wantonly, meaning with conscious indifference toward plaintiff rights," and requires that "at the time of his act or omission to act the tort-feasor be conscious, or chargeable with consciousness of his wrongdoing." *Rogers v. Florence Printing Co.*, 233 S. C. 567, 577, 106 S. E. (2d) 258; *Jones v. Garner*, 250 S. C. 479, 158 S. E. (2d) 909, supra.

Respondents contend that the report of the Summons, containing the designation of the cause of action as one for alienation of affection and criminal conversation, after the reporter had been cautioned not to do so was evidence of malice. Senator Stevens testified that, before the first article, he advised appellant's reporter: "You don't print anything about alienation of affection and criminal conversation, because there is no allegation. This is merely a summons and there is no allegation charging anyone with that as yet, and you better wait until the complaint comes down." Appellant correctly argues that, if the contents of public records are published with substantial accuracy, the fact that the

person about whom the article is written protested the publication is not evidence of malice. In *Oliveros v. Henderson*, 116 S. C. 77, 91, 106 S. E. 855, the Court stated:

> I have found no authority which holds that if a person has a right to publish the proceedings of a court that an objection to such publication by someone interested will be sufficient to fix a charge of malicious libel on the publisher. Prima facie, such publication is not libelous, and there is no presumption of malice therefrom.

The position is also taken that the designation of the action in the Summons (complaint not served) as one for alienation of affection and criminal conversation was not a proper part of the Summons and that, upon some unexplained basis, the reporter should have known this and refrained from its publication. The burden apparently sought to be placed upon the publisher is one of determining not only the accuracy but the relevancy of the allegations contained in the public record before publication, legal authority for which is not cited by either respondent. In fact, our decision in *Lybrand v. The State Co.*, supra, completely refutes the contention that the publisher is required to go behind the allegations contained in the public record.

This record conclusively shows that the articles in question were accurate reports of the documents as they were filed in the litigation against respondents, and that they were published without malice. Any other result would make it impossible for a publisher to accurately report a public record without assuming liability for the truth of the allegations contained in such record. We do not consider that such result has a factual or legal basis in this record. To uphold the verdict would amount to imposition of liability without fault contrary to the rule in *Gertz v. Welch*, 418 U. S. 323, 345-350, 94 S. Ct. 2997, 3009-3012, 41 L. Ed. (2d) 789. A directed verdict should have been granted.

The case is remanded for entry of judgment in favor of the appellants.

Reversed and remanded.

LITTLEJOHN and GREGORY, JJ., concur.

NESS and HARWELL, JJ., dissent.

HARWELL, Justice (dissenting):

The respondents in this defamation action were each awarded actual and punitive damages. The appellants allege that the denial of their motions for directed verdicts at the conclusion of evidence was error. I disagree and would affirm the judgment for the respondents.

The appellants published three separate articles concerning litigation involving the respondents and one John Reaves. In 1976, respondents and Mr. Reaves were all practicing attorneys in Loris, South Carolina. Respondent Padgett was formerly associated with Mr. Reaves but is now an assistant solicitor for Horry County. Respondent Stevens is a partner with his father, James P. Stevens, Sr., in the firm of Stevens, Stevens and Thomas. Respondent Stevens represented the wife of Mr. Reaves in domestic litigation against him. Mr. Reaves opposed Mr. Stevens, Sr., in the 1976 state senatorial campaign.

On December 6, 1976, Mr. Reaves, representing himself, filed a Summons (Complaint Not Served) naming respondents as defendants. Although no complaint was attached, Mr. Reaves stated that the cause of action was alienation of affection and criminal conversation. Another Summons (Complaint Not Served) was filed the same day against respondent Stevens stating abuse of process as the cause of action. None of the summonses contained formal allegations or ultimate facts. Respondent Stevens' father warned a reporter of the appellants not to print anything until the complaint was served because a summons alone does not contain allegations. Thereafter, the appellants published an article which reported that Reaves had named respondents as defendants in an action alleging alienation of affection and criminal conversation. The subsequently served complaints did not name either of the respondents in the criminal conversation action.

On January 6, 1977, after the complaints were served, the appellants published a second article which stated in part that the respondents were "cited" for alienation of affection.

Therefore, respondent Stevens questioned the reporter who wrote the articles as to why the appellant had refused to print a retraction concerning the criminal conversation suit. The appellants' reporter simply shrugged in response.

A third article appeared in the appellants' publication on March 29, 1977, concerning a Summons and Complaint which Reaves had filed alleging the respondents had committed barratry and champerty. The appellants' reporter was given a copy of the complaint by Reaves himself the night of March 28, 1977, in the Loris Centinel office. Before giving the copy to appellants' reporter, Mr. Reaves inquired whether the reporter would be interested in a story. The following morning, an article concerning the barratry and champerty suits appeared in appellants' publication.

None of the three suits initiated by Mr. Reaves were ever litigated.

Respondents filed the present action upon the grounds that the three articles were libelous and had caused them injury.

The United States Supreme Court has held that the Fourteenth Amendment permits the States to provide appropriate standards of liability for a publisher of defamatory falsehoods which injure private individuals, so long as damages are not allowed without a showing of fault. *Gertz v. Welch,* 418 U. S. 323, 347-348, 94 S. Ct. 2997, 3009-3012, 41 L. Ed. (2d) 789 (1974); *Time, Inc. v. Firestone,* 424 U. S. 448, 96 S. Ct. 958, 47 L. Ed. (2d) 154 (1976).

We have held that publications based on public documents are privileged if the report is fair and impartial and not based upon malice. *Lybrand v. The State Co.,* 179 S. C. 208, 184 S. E. 580 (1936); *Jones v. Garner,* 250 S. C. 479, 158 S. E. (2d) 909 (1968).

However, the privilege is lost if the published report is not accurate, fair, and impartial. *Oliveros v. Henderson,* 116 S. C. 77, 106 S. E. 855 (1921); *Lybrand v. State Co.,* supra. As noted in Oliveros, supra at p. 90:

> "The authorities all agree, however, that if such report is published it must be accurate, fair and impartial, not garbled, added to or taken from. No one has a right to take advantage of the privilege allowed to make comments injurious to the reputation or business of another."

In *Lybrand* an alleged defamatory publication was made based upon the filing of a summons *and* complaint. A demurrer to the defamation action was affirmed on appeal because there were no allegations that the publication was not a fair and true report of the pleadings. In contrast, respondents have alleged that the appellants' reports were not fair and impartial and have proved this to the satisfaction of the jury.

South Carolina Code Pleading recognizes only four formal pleadings—the complaint, answer, the reply and the demurrer. Harry Lightsey, South Carolina Code Pleading, p. 76 (1976). The summons is purely a jurisdictional tool, designed to contain neither facts nor allegations, but simply to afford notice. *Williams v. Carpenter*, 273 S. C. 339, 256 S. E. (2d) 316 (1979). The Summons (Complaint Not Served) is unique to South Carolina, and is not especially favored by this Court. *Jolley v. Jolly*, 265 S. C. 594, 220 S. E. (2d) 882 (1975); *Thompson v. Wilder*, et al., 272 S. C. 563, 253 S. E. (2d) 108 (1979); *Williams v. Carpenter*, supra.

The summonses filed by Reaves in the abuse of process and criminal conversation actions went beyond the notice function and stated causes of action totally unsupported by the underlying facts. Although the appellants were warned not to publish an article based on the summonses, they published one in which they incorrectly stated respondents had been named as defendants in a criminal conversation suit. Consequently, the article lost the qualified privilege because it was not fair and impartial. Even though an article contains defamatory falsehoods, *Gertz v. Welch*, supra, required a showing of fault before actual damages are imposed upon the publisher. I believe ample evidence existed from which the jury could have determined appellants' fault in failing to investigate properly before publishing. There, I maintain that actual damages were proper.

In addition to actual damages, the jury awarded respondents punitive damages. In *Gertz v. Welch*, supra, the United States Supreme Court stated that proof of actual malice is required before punitive damages are recoverable by a private individual. In *Stevens v. Sun Publishing Co.*, 270 S. C. 65, 240 S. E. (2d) 812 (1978), we stated that actual malice is established when reporters and publishers depart from responsible standards of investigation and print articles on the

basis of an admittedly unreliable source without further verification. Actual malice is also defined as the publication of an article with reckless disregard of whether it was false or not. *McClain v. Arnold*, 275 S. C. 282, 270 S. E. (2d) 124 (1980).

Appellants' reporter admitted that the first article would lead the reading public to believe incorrectly that Mr. Reaves had accused respondents of having criminal conversation with his wife. Because the reporter thought the summonses clearly stated these facts, he did not investigate the legal ramifications of a Summons (Complaint Not Served). In spite of advice not to print an article based solely on the summonses, the appellants proceeded to publish the defamatory statements. Since the appellants published the articles with reckless disregard of whether the statements were true or false, I deduce that actual malice existed.

In *Stevens v. The Sun Publishing Co.*, supra, we recognized that actual malice may be found also where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports. Mr. Reaves was the informant for the third article. Surely the appellants should have doubted the accuracy of Mr. Reaves' reports in light of the current litigation between respondents and Reaves. Therefore, I believe punitive damages in this case were proper.

I conclude that ample evidence existed to support the finding of appellants' fault; and therefore, actual damages were proper. I maintain the record also supports the jury's finding of actual malice, and consequently, punitive damages were properly awarded.

I would affirm.

NESS, J., concurs.

NESS, Justice (concurring in dissent):

I concur in the opinion of Justice Harwell and add these thoughts. The majority bases its decision to reverse the jury verdicts totalling $300,000.00 in this case on the erroneous premise that the articles complained of were fair and accurate reports of public documents. I believe the articles were one-sided, biased, and sufficiently inaccurate to support the jury's decision that they were defamatory.

The political controversy which undoubtedly gave rise to the personal vendetta which John Reaves attempted to carry out against James P. Stevens, Sr. is discussed at length in the majority opinion. The focus of this opinion, however, should be directed at the plaintiffs-respondents in this lawsuit, James P. Stevens, Jr. and Carroll D. Padgett, Jr., admittedly private individuals rather than public figures, who were caught in the wide net thrown by Reaves, and whose characters and careers were defamed by the three articles published by The Sun News. The majority opinion also neglects to note the fact that Reaves, who utilized The Sun News to vent his allegations of criminal conversation, alienation of affection, abuse of process, barratry and champerty against these young lawyers, was himself disbarred by this Court for solicitation of cases. See *In the Matter of John Laverne Reaves*, 272 S. C. 213, 250 S. E. (2d) 329 (1978).

The common law privilege which existed to protect the *accurate* reporting of matters of public record was elevated to constitutional dimension in *Cox Broadcasting Corp. v. Cohn*, 420 U. S. 469, 95 S. Ct. 1029, 43 L. Ed. (2d) 328 (1975). However, in order to qualify for protection under this privilege, the report of matters of public record must be fair and accurate. The Dean of Modern Tort Law, Prosser, made the following observations on the parameters of the common law privilege:

"[I]t has always been held that the report must be a fair and accurate one, and the privilege does not cover false statements of facts as to what has occurred, or mistakes in the names of parties, or the interpolation of defamatory matter, or a one-sided account." Prosser, Handbook of the Law of Torts, p. 832 (4th Ed. 1971).

The above statement of the law was adopted by this Court in *McClain v. Multimedia, Inc.*, 275 S. C. 282, 270 S. E. (2d) 124 (1980), and recently, in *Jones v. The Sun Publishing Company, Inc.*, 292 S. E. (2d) 23, Op. #21680, Smith's 3/30/82. In *Jones, supra*, this Court recognized that it had never before extended a qualified privilege to a publisher who inaccurately reports the contents of judicial proceedings, citing the United States Supreme Court decision in *Time, Inc. v. Firestone*, 424 U. S. 448, 96 S. Ct. 958, 47 L. Ed. (2d) 154 (1976).

In *Firestone, supra,* the Court re-emphasized that the principles announced in *Cox, supra,* were limited to accurate reporting. Thus, when a report is unfair or inaccurate, the privilege is defeated and the rules of *Gertz v Welch,* 418 U. S. 323, 94 S. Ct. 2997, 41 L. Ed. (2d) 789 (1974), apply; and while a state may not impose strict liability upon a publisher or presume damages, liability based on negligent reporting of the public record is constitutionally acceptable.

The critical inquiry thus becomes whether the three reports published by The Sun News detailing John Reaves' side of the litigation between himself and the respondents, were fair and accurate accounts of the documents on file in the Horry County Courthouse. The majority states numerous times in its opinion that it is undisputed that the articles accurately reported the contents of the documents on file, and apparently bases its decision to reverse on this premise. In fact, respondents never conceded the reports were fair and accurate, and the jury obviously failed to accept the contention now adopted by the majority opinion.

Appellants here elected to publish three obviously devastating articles on litigation which was no farther advanced than the summons and/or complaint stage. The articles improperly interpreted the summons (complaint not served), a mere jurisdictional tool not favored by this Court, as containing bona fide allegations against Stevens and Padgett. The January 6, 1977 article, based entirely on the filing of a summons by Reaves, stated in its headline that Stevens and Padgett had been "cited for alienation of affection." The use of the term "cite" was obviously inaccurate and improper, since it implies court action or sanction, when in fact, Reaves' conclusory allegations had been improperly stated on the face of the summons.

With its decision to reverse this jury verdict, the majority not only ignores the biased, one-sided, and inaccurate reporting on the part of The Sun News, but fails to impose any fault on a publisher which publishes articles based on documents which it knows to be legally insufficient and improper. Here, respondent Stevens' father testified he was approached by a reporter for The Sun News in the Horry County Courthouse prior to the publication of the initial article. According to James P. Stevens, Sr., the reporter handed him the summons

(complaint not served) containing the two causes of action for criminal conversation and alienation of affection, and asked: "What about this?" Stevens testified he replied:

> "You don't print anything about alienation of affection and criminal conversation, because there is no allegation. This is merely a summons and there is no allegation charging anyone with that as yet, and you better wait until the complaint comes down."

Despite Mr. Stevens' admonition, The Sun News proceeded to print the December 11, 1976 article based on the summons filed by Reaves on December 6, 1976. The article was obviously not "hot news," and the jury could have reasonably inferred that The Sun News was negligent in publishing an article once it had been informed of the impropriety of the summons filed by Reaves.

Further evidence of the bias and one-sidedness which accompanied the publication of the three articles was revealed by the testimony of the reporter, Mark Hodges. Hodges not only admitted his knowledge of the bitterness harbored by Reaves for the respondents, but implied he was prompted to write the articles by Reaves himself, rather than by the fact the documents were on file in the courthouse. The following testimony of Hodges is apposite:

> "Q. Now Mark, you say you went to the courthouse and you just happened to find this first summons?
> "A. I had heard about it.
> "Q. And from whom now? Now, let's be fair.
> "A. I just don't recall at this time.
> "Q. Was it from John Reaves?
> "A. It could have been."

This colliquy certainly gave rise to the reasonable inference that The Sun News published the three articles, exclusively setting forth Reaves' version of the controversy, with knowledge of the ill will between the parties, and did so largely at Reaves' instigation. A more one-sided and biased set of articles can scarcely be imagined. It is also interesting to note that *none* of the several lawsuits initiated by Reaves were ever pursued by him to trial.

Here, as in *Firestone, supra,* appellants contend that because the articles were based on documents filed with the Horry County Courthouse, they are protected by constitutional privilege. This argument, apparently embraced by the majority, loses sight of the requirement that publishers who undertake to reproduce the contents of public records must do so faithfully and impartially, as this Court recently recognized in *Jones v. The Sun Publishing Company, Inc.,* supra. This argument did not succeed in the *Firestone* case, and it should not succeed here because the three articles published were biased, one-sided, and factually incorrect.

It is well settled in South Carolina that a summons is a mere jurisdictional tool, incapable of containing facts and allegations. *Williams v. Carpenter,* 273 S. C. 339, 256 S. E. (2d) 316 (1979); Lightsey, South Carolina Code Pleading, p. 76 (1976). This Court has often expressed its dissatisfaction with the summons (complaint not served) which was incorrectly used here by Reaves to allege facts and conclusions against respondents. *Jolley v. Jolly,* 265 S. C. 594, 220 S. E. (2d) 882 (1975); *Thompson v. Wilder,* 272 S. C. 563, 253 S. E. (2d) 108 (1979).

Apart from the bias and one-sidedness evidenced by the articles, I conclude appellants had a duty to ascertain the validity of the documents filed by Reaves, once they were put on notice that a summons could not properly contain allegations. In my view, the facts here are even stronger than those presented in *Firestone, supra,* where the Supreme Court set forth a reporter's duty in reporting the contents of judicial records:

> "Petitioner (Time, Inc.) may well argue that the meaning of the trial court's decree was unclear, *but this does not license it to choose from among several conceivable interpretations the one most damaging to respondent.* Having chosen to follow this tack, petitioner must be able to establish not merely that the item reported was a conceivable or plausible interpretation of the decree, but that the item was factually correct." 424 U. S. 459, 96 S. Ct. 967. (Emphasis added).

The majority cites the decision in *Oliveros v. Henderson,* 116 S. C. 77, 106 S. E. 855 (1921), to rebut the inference of

negligence raised by the testimony of Stevens' father that he warned a Sun News reporter against printing an article based solely on a summons. The following language from the Oliveros case, however, is equally persuasive, though not quoted by the majority:

> "The authorities all agree, however, that if such report is published it must be accurate, fair and impartial, not garbled, added to or taken from. No one has the right to take advantage of the privilege allowed to make comments injurious to the reputation or business of another." 116 S. C. at p. 90, 106 S. E. (2d) 855.

With this opinion, the majority departs from the settled law, previously recognized by this Court and consonant with decisions of the United States Supreme Court, that a reporter who undertakes to print the contents of judicial records must do so accurately, fairly, and impartially. The majority, instead, establishes a new standard for reporters, one of only *substantial* accuracy. This new principle now allows reporters to print with impunity based upon an uninformed reading of documents on file, regardless of the legal propriety of the documents. This decision is contrary to our recent opinion in *Jones v. The Sun Publishing Company, Inc.*, supra, where we upheld the sanctity of a jury's determination of whether a publisher was at fault in printing an inaccurate report of matters of public record, even though it was inferable that the reporter had received the information incorrectly from an official source.

Here, The Sun News published three articles, all on the basis of summons and/or complaints, even though it had been informed that the summons was a jurisdictional tool incapable of containing judicially cognizable allegations. The articles were inferentially printed at the instigation of John Reaves, with appellants' clear knowledge of his malice toward respondents. The length of time between the filing of the summons (complaint not served) and the complaints, and the printing of the articles negatives any plausible assertion that these articles were "hot news" which could not await further verification. The articles were one-sided, biased, and incorrectly used the word "cite" in reporting on Reaves' conclusory

allegations. No article setting forth the position of respondents was ever published. Finally, the articles contained matter which was obviously damaging to attorneys such as Stevens and Padgett in that they were not only "cited" for matters affecting their ethical conduct as attorneys, but also for immoral activities with Reaves' estranged wife.

Under these circumstances, I conclude the question of appellants' negligence and recklessness in publishing the three articles was properly submitted to the jury for resolution. In view of the facts in the record to support the jury's conclusion that the articles were inaccurate and that appellants were negligent and reckless in publishing them, I would affirm their verdict as to both actual and punitive damages.

Affirmed.