720 S.E.2d 495

Rebecca WEST, Respondent,

v.

Todd MOREHEAD, Columbia City Paper,
LLC, and Paul Blake, Appellants.

No. 4887.

Court of Appeals of South Carolina.

Submitted June 8, 2011.
Decided Sept. 7, 2011.
Rehearing Denied Dec. 12, 2011.

4

Kirby D. Shealy, III and Evan Brook Bristow, both of Columbia, for Appellants.

S. Jahue Moore, Sr., of West Columbia, for Respondent.

FEW, C.J.

In this appeal from a jury verdict in favor of Rebecca West for actual and punitive damages on a defamation claim, we address the "fair report privilege" and whether West introduced sufficient evidence of Appellants' fault. We find the trial court properly handled the fair report privilege and properly submitted to the jury the question of whether West presented sufficient evidence of fault as to actual damages. We also find the trial court acted within its discretion in ruling on issues regarding a "clarification" published by Appellants. We therefore affirm the jury's award of actual damages. As to punitive damages, however, we find as a matter of law that the evidence was insufficient to support a finding of actual malice, and we reverse the award of punitive damages.

## I. Facts and Procedural History

On October 24, 2007, the Columbia City Paper published an article entitled "Adieu M'Armoire:[1] Whit–Ash Co. linked to

---

1. In French, "adieu" means "farewell" or "goodbye," and "armoire" means "wardrobe" or "furniture." "Adieu, Mi Armoire" means, quite literally, "goodbye, my wardrobe." *The Concise Oxford French–English Dictionary* 14, 57 (1968). Todd Morehead testified he intended the title

bizarre divorce case, other prominent figures implicated." The subject of the article was the divorce of Stella and Whit Black and a lawsuit Stella Black filed against Whit's divorce attorney, Rebecca West. In particular, the article addressed allegations Black [2] made in an affidavit and motion filed in the divorce case, and in the complaint filed in the civil lawsuit, to support Black's claim that West should not be permitted to represent Whit. In the civil lawsuit against West, Black alleged causes of action for civil conspiracy, breach of fiduciary duty, fraud, negligent misrepresentation, and malpractice. Paul Blake, a reporter for City Paper, reviewed the public record of Black's civil suit against West, which included Black's affidavit and motion in the divorce case. Todd Morehead, another City Paper reporter, wrote the article based on Blake's review of the public record and interviews Blake conducted. Neither Blake nor Morehead attempted to speak with West before publishing the article.

West sued City Paper, Blake, and Morehead for defamation. West, who was mentioned by name in the article, alleged the following two statements in the article defamed her: (1) "[I]t had all the ingredients of a cheap detective novel: . . . two-bit lawyers who'll even turn on their own clients if the retainer is juicy enough"; and (2) "[W]hen they think back to the tense days of the Black divorce many won't care about the corruptible attorneys or ETV property." At trial, Morehead admitted the statements refer to West. He also admitted he chose "adjectives" to describe West that do not appear in the public documents. However, both he and Blake testified the article was based exclusively on allegations Black made in the public documents. Morehead testified the article was written in "narrative literary style" and did not reflect his or City Paper's opinion of West.

The jury found in favor of West and awarded her $10,000.00 in actual damages and $30,000.00 in punitive damages.

---

to be a play on the opera "Adieu, M'Amour," because Stella Black is an aspiring opera star, and Whit Black owns a furniture store.

**2.** For simplicity, we refer to Stella Black as "Black" and Whit Black as "Whit."

## II. Legal Background

 The law of defamation permits a plaintiff to recover "for injury to her reputation as the result of the defendant's communication to others of a false message about the plaintiff." *Holtzscheiter v. Thomson Newspapers, Inc.*, 332 S.C. 502, 508, 506 S.E.2d 497, 501 (1998). To establish a defamation claim, a plaintiff must prove: (1) a false and defamatory statement was made; (2) the unprivileged statement was published to a third party; (3) the publisher was at fault; and (4) either the statement was actionable regardless of harm or the publication of the statement caused special harm. *Erickson v. Jones St. Publishers, LLC*, 368 S.C. 444, 465, 629 S.E.2d 653, 664 (2006); *Fleming v. Rose*, 350 S.C. 488, 494, 567 S.E.2d 857, 860 (2002). Under the law of defamation, however, certain communications give rise to qualified privileges, including the privilege to publish fair and substantially accurate reports of judicial and other governmental proceedings without incurring liability. *See generally Padgett v. Sun News*, 278 S.C. 26, 292 S.E.2d 30 (1982) (discussing fair report privilege); *Jones v. Garner*, 250 S.C. 479, 158 S.E.2d 909 (1968) (same); *see also* 2 Rodney A. Smolla, *Law of Defamation* § 8:3 (2d ed.2010). The applicability of this "fair report privilege" and the sufficiency of proof on the fault element, both as to actual and punitive damages, are the primary issues in this appeal. We discuss each in turn.

## III. The Fair Report Privilege

 "Fair and impartial reports in newspapers of matters of public interest are qualifiedly privileged." *Jones*, 250 S.C. at 487, 158 S.E.2d at 913. Appellants contend they were entitled to a directed verdict on the basis that the fair report privilege immunized them from liability. We disagree. "Under this defense [of qualified privilege], one who publishes defamatory matter concerning another is not liable for the publication if (1) the matter is published upon an occasion that makes it [qualifiedly or] conditionally privileged, and (2) the privilege is not abused." *Swinton Creek Nursery v. Edisto Farm Credit*, 334 S.C. 469, 484, 514 S.E.2d 126, 134 (1999) (citing Restatement (Second) of Torts § 593 (1977)). Whether the occasion is one which gives rise to a qualified privilege is a question of law. 334 S.C. at 485, 514 S.E.2d at 134. Because

the article relates to the content of public files on judicial proceedings, the trial court correctly ruled that the publication of the article is subject to the fair report privilege. However, "[t]he privilege extends only to a report of the contents of the public record and any matter added to the report by the publisher, which is defamatory of the person named in the public records, is not privileged." *Jones,* 250 S.C. at 487, 158 S.E.2d at 913. Where there is conflicting evidence,[3] "the question whether [a qualified] privilege has been abused is one for the jury." *Swinton Creek,* 334 S.C. at 485, 514 S.E.2d at 134. In this case, the evidence is subject to more than one inference as to whether the privilege was abused. In particular, there is conflicting evidence as to whether the article is a "fair and substantially true account" of allegations Black made in family and circuit courts. *See Padgett,* 278 S.C. at 31, 292 S.E.2d at 33 (stating the "[fair report] privilege consists of making a fair and substantially true account of the particular proceeding or record"). Thus, the trial court properly submitted to the jury the question of whether Appellants' use of narrative journalism and their choice of words other than those used in court documents was an abuse of the privilege.

## IV. Proof of Fault

Appellants also contend the trial court erred in not granting them a directed verdict on the element of fault, as to both actual and punitive damages.

### a. Actual Damages

 The trial judge charged the jury that the standard for proving fault in order to recover actual damages is common law malice. Neither party objected. A plaintiff may

---

**3.** In *Swinton Creek,* the supreme court cited *Woodward v. South Carolina Farm Bureau Insurance Co.,* 277 S.C. 29, 32–33, 282 S.E.2d 599, 601 (1981), for this proposition: "While abuse of [the conditional] privilege is ordinarily an issue [reserved] for the jury, . . . in the absence of a controversy as to the facts, . . . it is for the court to say in a given instance whether or not the privilege has been abused or exceeded." *Swinton Creek,* 334 S.C. at 485, 514 S.E.2d at 134 (bracketed language omitted in *Swinton Creek*); *see also Padgett,* 278 S.C. at 33, 292 S.E.2d at 34 (reversing the denial of a directed verdict motion based on fair report privilege where the "record conclusively show[ed] that the articles . . . were accurate reports of the documents as they were filed in the litigation").

prove common law malice by showing "the defendant acted with ill will toward the plaintiff, or acted . . . with conscious indifference of the plaintiff's rights." *Erickson*, 368 S.C. at 466, 629 S.E.2d at 665. Our standard of review as to the factual finding of common law malice allows us only to correct errors of law. 368 S.C. at 464, 629 S.E.2d at 663–64 (citing *Townes Assocs., Ltd. v. City of Greenville*, 266 S.C. 81, 85, 221 S.E.2d 773, 775 (1976)). "[A] factual finding by the jury will not be disturbed unless a review of the record discloses that there is no evidence which reasonably supports the jury's findings." *Id.* In making this review, we must view the evidence and the inferences that can be drawn from it in the light most favorable to the prevailing party. *Swinton Creek*, 334 S.C. at 476, 514 S.E.2d at 130; *see also Erickson*, 368 S.C. at 463, 629 S.E.2d at 663 ("The appellate court must determine whether a verdict for a party opposing the motion would be reasonably possible under the facts as liberally construed in his favor. . . . If the evidence is susceptible to more than one reasonable inference, the case should be submitted to the jury.").

There is conflicting evidence in this case as to whether West met her burden of proving Appellants acted with common law malice. In particular, we find some evidence exists as to whether the use of the phrases "two-bit lawyers" and "corruptible attorneys" to characterize the allegations contained in the public record amounted to conscious indifference to West's rights, and thus to common law malice. The trial court properly submitted this question of fact to the jury.

### b. Punitive Damages

Appellants contend the trial court should have granted a directed verdict on the question of punitive damages. We agree. "[I]n order to recover punitive damages from a media defendant, a private-figure plaintiff[4] must prove by clear and convincing evidence that the defendant acted with constitutional actual malice." *Erickson*, 368 S.C. at 466–67, 629 S.E.2d at 665. A plaintiff may meet this burden in either of two ways: (1) by proving "the defendant published the statement with knowledge it was false," or (2) by proving "the

---

4. The parties agree West is a private-figure plaintiff.

defendant published the statement ... with reckless disregard of whether it was false." *Id.* In this case there was no evidence Appellants knew any of the statements were false. We therefore focus on whether there is sufficient evidence in the record that Appellants acted with reckless disregard of the falsity of the statements. Our supreme court has stated:

> A "reckless disregard" for the truth ... requires more than a departure from reasonably prudent conduct. "There must be sufficient evidence to permit the conclusion that the defendant *in fact entertained serious doubts as to the truth* of his publication." There must be evidence the defendant had a *"high degree of awareness of ... probable falsity."*

*Elder v. Gaffney Ledger,* 341 S.C. 108, 114, 533 S.E.2d 899, 902 (2000) (quoting *St. Amant v. Thompson,* 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968), and *Garrison v. Louisiana,* 379 U.S. 64, 74, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964)); *see also Elder,* 341 S.C. at 114, 533 S.E.2d at 902 (stating "there must be evidence at least that the defendant purposefully avoided the truth"); *Holtzscheiter,* 332 S.C. at 513 n. 9, 506 S.E.2d at 503 n. 9 (stating that in order to prove reckless disregard, a plaintiff must prove the defendant had "serious reservations" about the truthfulness of the article).

 Unlike our review of the other factual findings of the jury, we review the jury's determination of actual malice as a question of law. *Elder,* 341 S.C. at 113, 533 S.E.2d at 901–02.

> Whether evidence is sufficient to support a jury's finding of constitutional actual malice in a defamation action is a question of law. The trial court must make such a determination before submitting the issue to a jury. When the jury makes such a finding, the appellate court must independently examine the record to determine whether the evidence sufficiently supports a finding of actual malice. This review is necessary due to the "unique character of the interest protected by the actual malice standard. Our profound national commitment to the free exchange of ideas, as enshrined in the First Amendment, demands that the law of libel carve out an area of 'breathing space' so that protected speech is not discouraged."

*Erickson,* 368 S.C. at 477, 629 S.E.2d at 670–71 (citing *Elder,* 341 S.C. at 113, 533 S.E.2d at 901–02, and quoting *Harte–Hanks Commc'ns, Inc. v. Connaughton,* 491 U.S. 657, 686, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989)).

 West argues Appellants' failure to investigate the legitimacy of Black's allegations is evidence of actual malice. West also contends Appellants did not call her to verify Black's allegations. However, the mere failure to investigate an allegation is not sufficient to prove the defendant had serious doubts about the truth of the publication. *Elder,* 341 S.C. at 114, 533 S.E.2d at 902 ("Failure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard."). The media has no duty to verify the accuracy or measure the sufficiency of a party's legal allegations. The Constitution does not require that the press "warrant that every allegation that it prints is true." *Reuber v. Food Chem. News, Inc.,* 925 F.2d 703, 717 (4th Cir.1991) (en banc).

We must therefore analyze whether there is evidence in the record that Appellants had a "high degree of awareness of probable falsity" concerning the characterizations of West as a "two-bit lawyer" and a "corruptible attorney," or whether Appellants otherwise "entertained serious doubts as to the truth" of the characterizations. The phrase "two-bit" means cheap, mediocre, inferior, or insignificant. *Webster's New World College Dictionary* 1547 (4th ed.2008). Applying the term to a lawyer in its most defamatory sense, the phrase means not a good lawyer, below par in performance, and not worthy of respect. The word "corruptible" means subject to bribery and to change from morally sound to morally unsound or debased. *Webster's New World College Dictionary* 327 (4th ed.2008). Applying the term to West in its most defamatory sense, the phrase means West is not devoted to her clients, she is willing to forsake the best interests of her clients, she is subject to being bribed, and she is a crooked lawyer.

In determining whether Appellants had a high degree of awareness of probable falsity of those characterizations, or whether they entertained serious doubts as to their truth, we must compare the terms "two-bit lawyer" and "corruptible attorney" to the terms Black used in her affidavit filed in

family court and in the complaint filed in her civil lawsuit. In her affidavit, Black made the following statements:

- "I have been most concerned about conflicts of interest that have arisen due to my lawyer, Rebecca West, sharing privileged communications about my business dealings concerning which she represented me prior to my institution of this action."

- "Beginning in 2005, I was represented by Rebecca West ... about a number of issues dealing with my business.... The next thing I knew, Ms. West was listed as one of my husband's attorneys of record...."

- "There is no question in my mind that since Rebecca West represented me in matters substantially related to this case, her representation of my husband in this action is an absolute conflict of interest."

- "[T]he matters for which Rebecca West ... represented me are substantially related to the very same issues that are at the very heart of this pending litigation.... [T]he same transactions and issues ... are matters about which I am now being questioned extensively in this divorce action. [This] makes me most concerned that Rebecca West, who did this work for me and to whom I imparted confidences, made this information available to [my husband's other lawyers]."

- "I also have concern that Ms. West ... did not perform a number of services that I requested of her in a timely fashion, if at all, especially after my husband left me...."

- "I believe she has used and passed along information I provided to her in confidence to [my husband's other lawyers]."

In the complaint for her civil lawsuit, Black made the following statements:

- "[My husband paid] legal fees generated by West ... for representing [me], all with the underlying goal of benefitting [my husband] ... without [my] knowledge or consent."

- "West ... did not follow through on representation of [me], ... all in an effort to damage [my] career opportunities."

- "West, ... having been paid by [my husband's company], furnished privileged and confidential information about

[me] to [my husband] ... for the purpose of assisting [him] in efforts to economically detriment [me] in the marital litigation."

- "West ... gave publicity to matters that are private to [me]."

- "[West] breached [her] fiduciary duties ... by disseminating her private business and personal matters to [my husband] without ... authorization."

- "[West] breached ... fiduciary duties by not only taking [my] private information to [my husband] ..., but also by ... sharing documents and information about [me] without proper disclosures to or securing waivers from [me], and ... going so far as to appear as an attorney of record for [my husband] in the matrimonial proceeding wherein confidential information gained by West during her representation of [me] is directly at issue."

- "West made false representations to [me] about assisting [me] and about [her] own true interests with the knowledge that those representations were false or in reckless disregard of the falsity of those representations."

Beyond these quotes from the affidavit and the complaint, the gist of the publicly filed allegations Black made against West is that West is not a good lawyer, and that in this particular instance West intentionally and deceitfully abused her position of confidence with Black for the purpose of harming Black and benefiting Black's husband so that West would realize financial gain. When we compare these publicly made allegations with the statements in the article that West is a "two-bit lawyer" and a "corruptible attorney," we find West has not proven by clear and convincing evidence that Appellants believed their characterization of the allegations Black made against West were not accurate. Therefore, West has failed to prove actual malice. We find the trial court erred as a matter of law in denying Appellants' directed verdict motion. Accordingly, we reverse the jury's award of punitive damages.

## V. Issues Regarding the "Clarification"

Appellants allege three errors relating to a "clarification" published by City Paper on October 26, 2007, two days after the article was published. First, Appellants contend the

trial judge should have granted a mistrial when West's counsel mentioned the clarification in his opening statement. Second, Appellants contend the trial judge erred in admitting the clarification as evidence. Third, Appellants contend they should have been permitted to call West's trial counsel as a witness to testify concerning a letter he wrote to City Paper seeking a retraction. We find the first two issues are not preserved, and the trial judge did not err in refusing to allow Appellants to call West's trial counsel as a witness.

We find the first and second issues unpreserved because the only objection made to the use of the clarification in the opening statement or the admission of it as evidence was based on Rule 407, SCRE. Rule 407 does not apply to this situation. The rule provides that evidence of subsequent measures "which, if taken previously, would have made the event less likely to occur" is not admissible for the purpose of proving culpable conduct. Rule 407, SCRE. City Paper could not possibly have issued a clarification of the article before the article was printed. Thus, Rule 407 could not be the basis on which the opening argument could have been limited, or on which the evidence could have been excluded. Appellants make arguments and cite authorities in their briefs that were not presented to the trial court. These arguments are not preserved. *See State v. Russell,* 345 S.C. 128, 133–34, 546 S.E.2d 202, 205 (Ct.App.2001) (finding evidentiary argument was not preserved for review because the issue was never raised to or ruled upon by the trial judge).

Appellants also argue the trial court erred in not allowing them to call West's trial counsel as a witness. In an offer of proof, Appellants questioned whether the letter written by West's counsel to City Paper was a threat to file a defamation lawsuit regardless of any retraction, and whether the letter was a strategic attempt to set up the lawsuit. The proffer contained no more than a discussion of what counsel was attempting to accomplish in writing the letter. The trial court indicated it would allow the letter into evidence. However, the court denied the request to call counsel as a witness, stating "there is no need to put him up there and question his trial tactics, which is all you want to do. That he wrote the letter is in evidence. That they responded to it is in evidence. The rest of it, forget it." The trial court essentially ruled that the letter speaks for itself, and counsel's reasons for writing

the letter were not relevant. We find the trial court's ruling was within its discretion. *See Hartfield v. Getaway Lounge & Grill, Inc.*, 388 S.C. 407, 413, 697 S.E.2d 558, 561 (2010) ("The admission of evidence is within the sound discretion of the trial judge and will not be reversed absent a clear abuse of discretion.").

## VI. Conclusion

We find the trial court properly submitted to the jury the factual questions of whether Appellants abused the fair report privilege and whether West met her burden of proving common law malice. We affirm the trial court's rulings regarding the clarification. However, we find the evidence is not sufficient to establish constitutional actual malice, and therefore West may not recover punitive damages. The judgment below is

**AFFIRMED IN PART AND REVERSED IN PART.**

PIEPER and LOCKEMY, JJ., concur.