Jo Anne ATWELL, Appellee,

v.

**RETAIL CREDIT COMPANY, Appellant.**

No. 13727.

United States Court of Appeals, Fourth Circuit.

Argued April 10, 1970.

Decided Sept. 30, 1970.

Francis D. Murnaghan, Jr., Baltimore, Md. (George C. Doub, Jr., and Venable, Baetjer & Howard, Baltimore, Md., and E. D. DeVaney, Jr., Atlanta, Ga., on brief), for appellant.

John T. Enoch, Baltimore, Md. (Bernard J. Sachs, Daniel E. Liebfeld and Goodman, Meagher & Enoch, Baltimore, Md., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and BRYAN and BUTZNER, Circuit Judges.

HAYNSWORTH, Chief Judge.

The dispositive issue in this appeal from a judgment for the plaintiff for libel committed in the dissemination of a confidential credit report is whether the claim is barred by the Maryland one year statute of limitations (Md. Code Ann. Art. 57, § 1). We find that it is, and direct entry of judgment for the defendant.

In 1965 Mrs. Atwell began to have difficulties regarding automobile insurance. From October 10 through some time in 1967 she experienced a series of unexplained cancellations and refusals to issue new insurance by several companies. Through inquiries made at the office of the Maryland Insurance Commission, she learned that her difficulties stemmed from derogatory information about her character and reputation furnished to the companies with whom she had applied for insurance coverage.

In May 1967 Eunice Evans, a friend of Mrs. Atwell's who was employed by an insurance company, undertook to procure on her behalf (whether it was at her request or direction was sharply disputed at trial but is not relevant to this issue) a report similar to the reports previously furnished to other companies. Pursuant to Miss Evans' request, ostensibly made on behalf of her employer, the defendant sent a report on Mrs. Atwell dated May 18, 1967. Miss Evans took the report home with her, and its contents were disclosed to Mrs. Atwell.

On June 7, 1967 Mrs. Atwell called at the office of Mr. J. A. Cronin, the manager of the defendant's Catonsville, Maryland office, to discuss the situation. Although there is some dispute as to parts of the conversation, she did tell him that she had in her possession a copy of the May 18 report and that she had consulted an attorney about it, asserted that the derogatory information contained in it was false, and demanded that it be corrected. It was agreed that a new

investigation would be conducted, and arrangements were made for further contact between Cronin and Mrs. Atwell.

Twelve days later, before the new investigation was completed, Mrs. Atwell's attorneys informed the defendant by letter that they represented her in connection with a claim for libel and slander. The action was instituted on September 8, 1967 in the Superior Court of Baltimore and was thereafter removed by the defendant to the district court.

■ The law of Maryland controls our resolution of the issues presented. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079.

The action for libel is founded on the report of May 18, 1967 and on a similar report of June 27, 1966 furnished by the defendant to Employer's Mutual Casualty Company (Emcasco).

■ Under Maryland law an action for libel or slander must be brought within one year after the cause of action accrues, Md. Code Ann. Art. 57 § 1, unless the defendant fraudulently concealed the cause of action from the plaintiff so as to prevent its discovery by the exercise of due diligence. Md. Code Ann. Art. 57 § 14; New England Mutual Life Insurance Co. v. Swain, 100 Md. 558, 60 A. 469. It is settled in Maryland that a cause of action accrues at the time the wrong was committed, not at the time of its discovery. Killen v. George Washington Cemetery, Inc., 231 Md. 337, 190 A.2d 247, and cases cited therein.

Although the Maryland courts have recognized limited exceptions as to particular causes of action not relevant here,[1] there is no exception for libel, nor have we any reason to suppose that this case, were it being tried in the state courts, would provide an occasion for the creation of an exception. Thus, any action based on the Emcasco report, published more than a year before this action was instituted, is barred unless the defendant fraudulently concealed its wrong from Mrs. Atwell.[2]

■ The mere fact that the report was intended for private use does not constitute fraudulent concealment.[3]

Fraudulent concealment is asserted in Mrs. Atwell's June 7, 1967 conversation with Mr. Cronin. At that time, she argues, she was ignorant of the existence of the Emcasco report, which furnished the basis of an action which would have been timely if filed at that time. During the interview, she urges, Mr. Cronin made false and fraudulent statements designed to keep her in ignorance. She also argues that in failing to inform her two weeks later, as promised, of information other than what she already had, there was a breach of duty constituting fraud.

1. The principal exception is in actions for medical or other professional malpractice. See Mattingly v. Hopkins, 254 Md. 88, 253 A.2d 904; Mumford v. Staton, Whaley & Price, 254 Md. 697, 255 A.2d 359. The exception for professional malpractice cannot fairly be described as a possible opening wedge to a general change in the Maryland rule; it is an exception of long standing, having been applied as early as 1917. The reasons for Maryland's application of the "discovery of the wrong" rule in professional malpractice cases—the relation of trust, reliance on professional expertise, and the likelihood that injury will not occur simultaneously with the wrongful act or omission—are all peculiarly related to the nature of professional conduct. None of them are present in an action for libel, in which there is no contractual or other relation of trust, no reliance, and in which the principal injury occurs when the libel is published.

2. Although the report which Miss Evans procured was published within one year preceding the institution of this action, no damages were awarded based on that report, nor could any award of damages have been founded on it, since it was procured on Mrs. Atwell's behalf and its contents were revealed to no one other than those persons to whom she herself revealed them.

3. See Peacock v. Retail Credit Co., 5 Cir., 429 F.2d 31, affirming 302 F.Supp. 418. *Peacock* dealt with a Georgia statute similar to Md.Code Ann. Art. 57 § 14.

A review of the record convinces us that there was no evidence to support a finding either that fraud was practiced or that the cause of action was concealed from Mrs. Atwell. Principal reliance is placed on the inference that at the time of the interview Mr. Cronin had in his possession a copy of the Emcasco report and falsely stated that he did not. This inference is totally unsupported. It is established that he did have a copy of the May 18, 1967 report, which made reference to the fact that a report had been furnished to Emcasco. However, the uncontradicted evidence was to the effect that the defendant regularly destroyed old reports when an updated report was prepared on the same person giving similar information to that contained in the prior report. There was no evidence indicating a possibility that this was not done here. Such evidence as exists is entirely to the contrary. At the time the case was tried, it was established that the defendant had no copy of the Emcasco report, and it was necessary to procure a copy from Emcasco. In addition, it was established, and Mrs. Atwell relies on the fact, that on May 18, 1967, when the report obtained by Miss Evans was prepared, the defendant's copy of the Emcasco report was not in Catonsville. Nothing in the record will support an inference that it was returned to Catonsville rather than being destroyed in accordance with the usual practice.

Even if Mr. Cronin did not have the Emcasco report, it is argued that he knew of its contents at the time of the interview. Again, the only basis for this conclusion is the mention in the May 18 report that prior reports had been furnished. Mr. Cronin had no better basis for inferring the contents of the Emcasco report from that than did Mrs. Atwell. Furthermore, he had no reason to supply her with information which he believed she already had; both testified that she told him during the interview that she

had the May 18 report in her pocketbook at that time, and Mr. Cronin testified without contradiction that she indicated detailed knowledge of its contents.

Finally, even accepting as true Mrs. Atwell's testimony that Mr. Cronin promised to report further to her two weeks after the interview, and accepting also that the undertaking to supply further information contemplated supplying details about the Emcasco report,[4] the failure to do so cannot be held to be a fraud in light of the fact that before the two week period expired Mrs. Atwell had engaged attorneys to bring this action, and the defendant had been notified of the fact.

Although our finding that no fraud was practiced is sufficient to warrant reversal, it is required on the additional, and perhaps more compelling, ground that regardless of whether any conduct at or after the June 7, 1967 interview could be said to constitute fraud, it concealed nothing from Mrs. Atwell. Her own testimony establishes beyond question that before she began the interview she knew, or should have known, that the defendant had furnished a report to Emcasco with the same or similar information as that contained in the May 18 report.

After she received a notice of cancellation from Emcasco, Mrs. Atwell sought the assistance of Mr. Thomas Murphy of the Maryland Insurance Commission to learn the reason for the repeated cancellations. Although at the trial Mr. Murphy could not recall details of the conversations, Mrs. Atwell testified that he told her he had learned the reasons for the cancellations, and that he stated those reasons, in general terms having to do with adverse reports on her personal life, to her by telephone.

Shortly afterward, the May 18 report was procured, and the information it contained was in some way furnished to

---

4. Probably the only reasonable construction that can be placed upon Cronin's promise was to procure further investigation looking toward the possibility of a correction of the adverse information.

Mrs. Atwell.[5] This report contained in detail the derogatory statements to which Mr. Murphy had referred. The correspondence between the information in the report and the statement made by Mr. Murphy was so clear that no reasonable person could have failed to infer that a similar report had been furnished to Emcasco. This concurrence was reinforced by a statement in the May 18 report that the defendant had previously reported to Emcasco about Mrs. Atwell on June 27, 1966.

Well before the interview commenced, Mrs. Atwell knew that the defendant, in the business of furnishing reports to insurance companies, had furnished one report on her which contained derogatory information. She knew or should have known that Emcasco's cancellation was based on information substantially identical to that furnished by the defendant to Miss Evans' employer. She knew or should have known that the defendant had furnished a report on her to Emcasco and that it was furnished on June 27, 1966; and she had every reason to believe that it was the same report on which Emcasco based its cancellation. No more was required for her to have knowledge of the facts constituting her cause of action. That she did know all these facts is further strongly suggested by the fact that, without waiting for any further information after the interview, she engaged attorneys to prosecute her claim for libel. Nothing occurring at the interview could have resulted in concealment of the cause of action. One cannot conceal from a person what he already knows. The evidence admits of no other conclusion.

Since the evidence failed to support a finding of fraudulent concealment, the

defendant was entitled to judgment on its defense of limitations. The judgment for the plaintiff will be reversed and the case remanded for entry of judgment for the defendant.

Reversed and remanded.

---

5. It is difficult to arrive at any conclusion as to the manner and form in which she received the information in the May 18 report. She told Mr. Cronin at the interview that she had a copy of it in her possession at that time. In her deposition and in answer to interrogatories she testified that she had not received a copy of the report but that Miss Evans had

orally given her the information. At the trial she testified that she had never spoken with Miss Evans and had received the information through an intermediary. In any event, the information was made available to her and in some form was in her possession at the time of the interview.