Carroll L. AUSTIN, Charles S. Glaser, Judy C. Howard, Nancy Brown, Anthony L. Duckett, Josephine Hill, David R. Frick, Ronnie Dean Duckett, James A. McAbee, Jr., John Edward Ward, Robin W. Caldwell, Plaintiffs,

v.

The TORRINGTON COMPANY, a subsidiary of Ingersoll-Rand Company, Inc., Defendant.

Civ. A. Nos. 7:84–763–14, 7:84–999–14, 7:84–1531–14, 7:84–2062–14, 7:84–2076–14, 7:84–2182–14, 7:84–2257–14, 7:84–2279–14, 7:84–2322–14, 7:84–2323–14 and 7:84–2324–14.

United States District Court, D. South Carolina, Greenville Division.

June 13, 1985.

J. Kendall Few, Greenville, S.C., for plaintiffs.

Jack H. Tedards, Jr. and Thomas L. Stephenson of Leatherwood, Walker, Todd & Mann, Greenville, S.C., Robert L. Thompson, Elizabeth F. Reveley, Stephen M. Paskoff, and Thomas A. Pogue of Elarbee, Thompson & Trapnell, Atlanta, Ga., for defendant.

## ORDER

WILKINS, District Judge.

This matter is before the Court on Defendant's motion for judgment notwithstanding the verdict (judgment n.o.v.) or, in the alternative, for a new trial, and for stay of execution. For the reasons stated herein, Defendant's motion for judgment n.o.v. or a new trial is denied, and Defendant's motion for stay of execution is dismissed for mootness.

## PROCEEDINGS

Plaintiffs were all formerly employed by Defendant, The Torrington Company (Torrington), at its Tyger River plant in Union, South Carolina. Plaintiffs alleged that Torrington, through its personnel manager, Paul Love, slandered and blacklisted them. During the trial, Torrington moved for a directed verdict at the close of Plaintiffs' case and at the close of all evidence. The motions were denied. The jury returned a verdict of actual and punitive damages for each Plaintiff.

## FACTS

On a motion for a directed verdict or on motion for judgment n.o.v., the evidence must be considered in the light most favorable to the party against whom the directed verdict or judgment n.o.v. is asked; any conflict in evidence must be resolved in his favor and every conclusion or inference that can be legitimately drawn therefrom in his behalf must be drawn. *Burcham v. J.P. Stevens & Co., Inc.*, 209 F.2d 35, 37 (4th Cir.1954).

Plaintiffs' claims arose from a telephone conversation between Torrington's personnel manager Love and Bill Dowd, the personnel manager of Webb Forging Company, which operates a plant in Carlisle, South Carolina. Dowd testified that in this conversation, Love said that he could not recommend Plaintiffs for employment. Love referred to Plaintiff Austin as having an emotional problem, to Plaintiffs Anthony and Ronnie Duckett as being militants, and to Plaintiff Howard as being an organizer for NOW and ERA. A reasonable inference was that the remaining Plaintiffs all fell into an "undesirable" category. Dowd typed the information given him by Love and retained it at his desk. Dowd's testimony effectively established that this conversation could not have occurred later than the end of August, 1982.

Plaintiff Austin learned of this list from a security guard who testified that he saw it on Dowd's desk, made a copy, and delivered it to his cousin Austin in March, 1984. Plaintiff Austin filed his Complaint in April, 1984 charging, *inter alia*, blacklisting and defamation. There is no evidence indicating that any of the other Plaintiffs could have reasonably discovered the existence of the blacklist prior to the filing of Austin's Complaint. Between May 7, 1984 and September 28, 1984, suits by the other Plaintiffs were filed. It is undisputed that the statute of limitations could only operate to bar the slander claim contained in the seven Plaintiffs' suits which were filed after September 1, 1984 (A. Duckett, Hill, Frick, R. Duckett, McAbee, Ward, Caldwell).

## DISCUSSION

Torrington's motion is based on 14 grounds. Only the contention that Plaintiffs' lawsuits were time-barred by the statute of limitations warrants extended discussion.

Provisions governing the limitation of civil actions under South Carolina law are found in S.C.CODE ANN. § 15–3–10, *et seq.* (Law.Co-op.1976 & Supp.1984). The general rule is that civil actions must be commenced within the stated period after the cause of action has accrued. § 15–3–20. A cause of action is said to have accrued at the moment when the plaintiff has a legal right to institute and maintain the action. *Brown v. Finger*, 240 S.C. 102, 111, 124 S.E.2d 781, 785 (1962). The length of the governing period varies with different causes of action, from those of 20 years for actions by the state, § 15–3–310, or upon a bond or other writing secured by a mortgage of real property, § 15–3–520, to 10

years for first and second actions for recovery of land, § 15–3–340, or founded on title or for rents or services, § 15–3–350. A six-year statute governs actions on contracts, § 15–3–530(1), and "any other injury to the person or rights of another, not arising on contract" and not otherwise expressly enumerated by statute, § 15–3–530(5). A recent statute provides also that actions (other than medical malpractice actions) governed by Section 15–3–530(5) shall be commenced within six years after the person "knew or by the exercise of reasonable diligence should have known that he had a cause of action." § 15–3–535. The "exercise of reasonable diligence" means that "an injured party must act with some promptness where the facts and circumstances of an injury would put a person of common knowledge and experience on notice that some right of his has been invaded or that some claim against another party might exist." *Snell v. Columbia Gun Exchange, Inc.*, 276 S.C. 301, 303, 278 S.E.2d 333, 334 (1981).

■ The statute governing causes of action for slander and libel is notably one of the shortest, requiring that an action be commenced within two years from the date it accrues. § 15–3–550(1). A cause of action for blacklisting is of common law origin in South Carolina. It exists separately from the elements of conspiracy or defamation. *See Parker v. Southeastern Haulers*, 210 S.C. 18, 28, 41 S.E.2d 387, 391–92 (1947); *Rhodes v. Granby Cotton Mills*, 87 S.C. 18, 42–44, 68 S.E. 824, 833–34 (1910). As such, it is independent of these other causes of action, not merely an outgrowth of another traditional tort, and is controlled by the six-year limitation period of Section 15–3–530(5). *Cf. Ford v. Hutson*, 276 S.C. 157, 167, 276 S.E.2d 776, 781 (1981) (tort of outrage is independent of other torts, and not merely an outgrowth thereof, so that the six-year statute of Section 15–3–530(5) is applicable).

The jury's verdict in the instant case did not specify whether damages were based upon the slander of Plaintiffs by Defendant's employee Love, or upon the "black-list" which was created separately therefrom. It was obvious to the Court that a special verdict separating the award of damages under the two causes of action would not have been helpful to Torrington because the facts supporting the two causes of action were so inextricably intertwined that a verdict and an award of damages on blacklisting would have compelled the same result on slander. Therefore, the question of whether damages were based upon slander, governed by a two-year statute of limitations, or blacklisting, governed by a six-year statute, is now effectively mooted, rendering the statute of limitations issue academic. Nevertheless, the Court does address the issue of when the slander cause of action accrues, commencing the running of the two-year statute of limitations. While the Supreme Court of South Carolina has never spoken on this issue, this Court is confident that if presented with this same question it would rule that Plaintiffs' slander actions were not time-barred.

■ The South Carolina legislature has seen fit to allow varying lengths of time before a particular wrong must be pursued through the courts. In affixing a particular length of time to a cause of action it may be presumed that the legislature has acted rationally and according to a fixed and informed purpose. *See Bradley v. Hullander*, 277 S.C. 327, 330, 287 S.E.2d 140, 141 (1982). The logic of statutes of limitations is that litigation must be commenced within a specified time in order that evidence be readily available and that controversies be ended within a reasonable period of time. *Webb v. Greenwood County*, 229 S.C. 267, 276, 92 S.E.2d 688, 691 (1956). However, the legislature has enacted a tolling statute to protect litigants in particular situations where they could not have reasonably had notice of a claim against another or of an invaded right. As such, these statutes reflect an appropriate balance in policy of discouraging a plaintiff who sleeps on his rights, and yet not unreasonably shielding a wrongdoer.

The logic behind a shorter statute of limitations for defamatory utterances is apparent under most circumstances. The gist of defamation lies in the injury caused to one's reputation, the feeling entertained toward him by others in his community or in the public eye. *Wardlaw v. Peck*, 282 S.C. 199, 205, 318 S.E.2d 270, 274 (S.C.Ct.App. 1984). Unlike most torts, defamation is defined in terms of the injury, damage to reputation, and not in terms of the manner in which the injury is accomplished. *Morrison v. National Broadcasting Company, Inc.*, 19 N.Y.2d 453, 458, 227 N.E.2d 572, 574, 280 N.Y.S.2d 641, 644 (1967). However, reputation and harm thereto tend to be fluid rather than constant. One can consciously "live down the lie," assuming one knows of its existence, by simply confronting it with conduct which plainly says, "It is not so." Thus, in the general course of events the public nature of this intangible asset, or damage to it, makes the harm readily discoverable in the first instance, and in the second instance renders the harm committed more temporary in its effect than other harms. The legislative enactment of a short two-year limitation is, therefore, fully justified in the normal course of events.

Torrington argues that the slander of Plaintiffs was a defamation to be treated as any public utterance and that the date of publication or first utterance, a private telephone conversation, should commence the running of the statute of limitations. Torrington argues, in effect, that a surreptitious publication, willfully kept secret from those it harms, which is false and malicious in its origins, and which inflicts actual and reasonably undiscoverable harm to reputation, is a slander to be time-barred because the secret was kept hidden until the two-year statute of limitations had run. This logic would allow a wrongdoer to injure someone by slanderous statements without being subject to meaningful retribution. The argument does not impress the Court and is not consistent with the law of South Carolina and other jurisdictions.

■ Under other circumstances, fraudulent concealment of a defamatory statement has been held to toll the running of the statute of limitations. *See, e.g., Weinberger v. Retail Credit Company*, 498 F.2d 552, 555 (4th Cir.1974). Three elements are necessary to toll the statute under this doctrine: (1) fraudulent concealment by the party raising the statute, (2) the failure of the innocent party to discover the facts which are the basis of his cause of action, and (3) the exercise of due diligence on his part. Further, the rule that the statute commences on the date of "discovery" of the harm, rather than the more common rule of the date of "publication," has been applied by some courts in instances of false credit reports which have harmed the consumer and come to light only after the statute had expired. *Kelley v. Rinkle*, 532 S.W.2d 947, 949 (Tex.1976); *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.*, 61 Ill.2d 129, 136, 334 N.E.2d 160, 164 (1975). The courts which have applied the "date of discovery" rule have done so out of a concern for the potential abuse in allowing the "date of publication" rule to shield undiscovered wrongdoing, *Kelley*, 532 S.W.2d at 949, and because such a result is inconsistent with the reasoning behind such statutes:

> To hold here that the plaintiff's cause of action accrued, if at all, at the time the credit report was received by the defendant's subscribers would be to follow an abstract and mechanical reasoning in deciding when the cause of action accrued. The purpose of a statute of limitations is certainly not to shield a wrongdoer; rather it is to discourage the presentation of stale claims and to encourage diligence in the bringing of actions.

*Olesker*, 61 Ill.2d at 136–37, 334 N.E.2d at 164.

It should be noted that the *Olesker* decision distinguished the privately damning utterance of a credit report from the publication for public attention and knowledge where the person commented on has had access to the statement. *Id.*, 61 Ill.2d at 138, 334 N.E.2d at 164. Both *Olesker* and *Kelley* expressly excluded the "date of dis-

covery" rule from application where the defamation is made a matter of public knowledge through such agencies as newspapers or television. *Olesker*, 61 Ill.2d at 137, 334 N.E.2d at 164; *Kelley*, 532 S.W.2d at 949.

In *Atwell v. Retail Credit Company*, 431 F.2d 1008 (4th Cir.1970), the Fourth Circuit Court of Appeals declined to apply the "date of discovery" rule in a Maryland cause of action for libel committed in the dissemination of a confidential credit report. The decision is based, however, on the then existing Maryland statute of limitations for libel or slander and the failure of the record on review to evidence any fraudulent intent by the defendant in concealing the wrong done the plaintiff. *Id.* at 1010–11. In short, the Court found no Maryland exception as to particular causes of action and the time at which they accrue, and found the defendant essentially blameless in plaintiff's delay in bringing the time-barred action.

Subsequent to *Atwell*, the Maryland Court of Appeals in *Sears, Roebuck and Co. v. Ulman, Md.*, 287 Md. 397, 401, 412 A.2d 1240, 1242 (1980), recognized that fairness to a plaintiff who has not slept on his rights justifies adopting the "discovery rule" and held that a cause of action for a defamatory credit report accrues when the plaintiff knew or reasonably should have known that the defendant committed a wrongful act which injured or damaged the plaintiff.

█ A surreptitious slander which results in harm is close akin to a false credit claim which injures, although unknown to the injured party. In this case, the secrecy surrounding the harm done to Plaintiffs, the real and permanent effect of the harm, and the conduct of Love and Dowd in concealing the act and the injury all warrant the application of a "date of discovery" rule for commencing the statute of limitations. This exception is limited to the facts of this case and does not abrogate the date of utterance rule which applies in the traditional slander case. The other grounds upon which Defendant seeks judgment

n.o.v. or a new trial are without merit and are accordingly denied. Further, Defendant's motion for an order staying execution of the judgment pending disposition of Defendant's motion for judgment n.o.v. or for a new trial is also dismissed.

AND IT IS SO ORDERED.