Carroll L. AUSTIN, Appellee,

v.

The TORRINGTON COMPANY, a
subsidiary of Ingersoll-Rand
Company, Inc., Appellant,

and

Webb Forging Company, a subsidiary
of Jervis B. Webb, Company,
Defendant.

Charles S. GLASER, Appellee,

v.

The TORRINGTON COMPANY, a
subsidiary of Ingersoll-Rand
Company, Inc., Appellant,

and

Webb Forging Company, a subsidiary
of Jervis B. Webb, Company,
Defendant.

Judy C. HOWARD, Appellee,

v.

The TORRINGTON COMPANY, a
subsidiary of Ingersoll-Rand
Company, Inc., Appellant,

and

Webb Forging Company, a subsidiary
of Jervis B. Webb, Company,
Defendant.

Nancy BROWN, Appellee,

v.

The TORRINGTON COMPANY, a
subsidiary of Ingersoll-Rand
Company, Inc., Appellant,

and

Webb Forging Company, a subsidiary
of Jervis B. Webb, Company,
Defendant.

Anthony L. DUCKETT, Appellee,

v.

The TORRINGTON COMPANY, a
subsidiary of Ingersoll-Rand
Company, Inc., Appellant,

and

Webb Forging Company, a subsidiary
of Jervis B. Webb, Company,
Defendant.

Josephine HILL, Appellee,

v.

The TORRINGTON COMPANY, a
subsidiary of Ingersoll-Rand
Company, Inc., Appellant,

and

Webb Forging Company, a subsidiary
of Jervis B. Webb, Company,
Defendant.

David R. FRICK, Appellee,

v.

The TORRINGTON COMPANY, a
subsidiary of Ingersoll-Rand
Company, Inc., Appellant,

and

Webb Forging Company, a subsidiary
of Jervis B. Webb, Company,
Defendant.

Ronnie Dean DUCKETT, Appellee,

v.

The TORRINGTON COMPANY, a
subsidiary of Ingersoll-Rand
Company, Inc., Appellant,

and

Webb Forging Company, a subsidiary
of Jervis B. Webb, Company,
Defendant.

James A. McABEE, Jr., Appellee,

v.

The TORRINGTON COMPANY, a
subsidiary of Ingersoll-Rand
Company, Inc., Appellant,

and

Webb Forging Company, a subsidiary
of Jervis B. Webb, Company,
Defendant.

John Edward WARD, Appellee,

v.

The TORRINGTON COMPANY, a
subsidiary of Ingersoll-Rand
Company, Inc., Appellant,

and

Webb Forging Company, a subsidiary
of Jervis B. Webb, Company,
Defendant.

Robin W. CALDWELL, Appellee,

v.

The TORRINGTON COMPANY, a
subsidiary of Ingersoll-Rand
Company, Inc., Appellant,

and

Webb Forging Company, a subsidiary
of Jervis B. Webb, Company,
Defendant.

Nos. 85–1740(L), 85–1741 to 85–1750.

United States Court of Appeals,
Fourth Circuit.

Argued March 4, 1986.

Decided Jan. 23, 1987.

**418**

David L. Freeman (Carl F. Muller, Wyche, Burgess, Freeman & Parham, P.A., Greenville, S.C., Robert L. Thompson, Stephen M. Paskoff, Thomas A. Pogue, Elarbee, Thompson & Trapnell, Atlanta, Ga., on brief), for appellant.

J. Kendall Few (Few & Glenn, Greenville, S.C., on brief), for appellees.

Before HALL and WILKINSON, Circuit Judges, and MICHAEL, United States District Judge for the Western District of Virginia, sitting by designation.

MICHAEL, District Judge, Sitting by Designation:

This case presents four issues for resolution under the law of South Carolina, Federal jurisdiction being predicated on diversity of citizenship. First, does South Carolina common law recognize a cause of action for "blacklisting"? Second, was the language alleged by the plaintiffs below as slanderous sufficient under South Carolina common law and under the evidence presented at trial, to support the jury's affirmative verdict on the question of slander? Third, were the challenged statements privileged, or qualifiedly privileged, as a matter of law? Fourth, under the evidence adduced, were the plaintiffs caused to suffer actual damages, and, if so, are the plaintiffs entitled to punitive damages?

### I. *Factual Background*

The case arises under a somewhat unusual set of facts. Eleven separate cases were filed against the Torrington Company, Appellant herein, by eleven of its former employees. The complaints asserted claims against Torrington and Webb Forging Company, but Webb was dismissed as a party before trial for lack of diversity jurisdiction, and the cases proceeded against Torrington only. These eleven cases were consolidated and tried to a jury in the United States District Court for the District of South Carolina. Verdicts were returned for all eleven plaintiffs, all receiving monetary awards ranging from $5000.00 to $7500.00 for "hurt feelings", all receiving monetary awards of $20,000.00 each for punitive damages, and three plaintiffs receiving monetary awards ranging from $1350.00 to $7500.00 for economic loss.

The remaining eight plaintiffs received nothing for economic loss.

The verdicts were followed by the defendant's motion, among others, for judgment *non obstante veredicto*, or in the alternative for a new trial. This motion was denied, 611 F.Supp. 191, and this appeal followed in timely fashion.

It is apparent that there were some factual differences in the various situations involving the eleven plaintiffs. However, each plaintiff sought actual and punitive damages under two counts, one for defamation and one for "blacklisting". In each of the eleven complaints, the basis asserted for both allegations was a telephone call between the personnel manager of the Appellant, Mr. Love, and the personnel manager of a separate, similar company, the Webb Forging Company, Mr. Dowd.

Essentially, the facts are not much in dispute, so far as the events giving rise to the charges of defamation and blacklisting are concerned. In 1982, because of economic considerations, the Appellant had been required to lay off many of its personnel. At that time, the Webb Forging Company was in the process of establishing its plant in the same community, to operate in somewhat the same business activity as that of Appellant, and Mr. Dowd was engaged in the process of selecting new employees to staff the Webb Forging Company plant.

Incident to that hiring process, one of the plaintiffs, Charles Glaser, a former employee of Torrington, applied to and was interviewed by Mr. Dowd for a position at the Webb Forging Company. Mr. Glaser had brought to the interview a resume which he left with Mr. Dowd. Dowd then called Mr. Love at Torrington to inquire about matters concerning Glaser's application. At trial, Dowd testified that he was not certain about the recall rights of employees laid off by Torrington, and that he wished to clarify this question. Love indicated that he was not able to recommend Mr.

Glaser for employment, and he then apparently went on to state his views about other former employees of Torrington. Mr. Dowd made notes of these comments as they were made, and ultimately reduced them to a memorandum in the following form:

CONFIDENTIAL INFORMATION [1]

*1. CHARLES GLASER. 17 yrs. (NO)
2. TIM CALICUT MILITANT
3. PAUL RICE WORK.COMP. LABOR BOARD GOOD TALKER (NO)
*4. SONNY MCABEE
*5. NANCY BROWN
*6. JUDY HOWARD ORGANIZER (NOW) + ERA
*7. ROBIN CALDWELL
*8. JOSEPHINE HILL
*9. CARROLL AUSTIN EMOTIONAL PROBLEM (MALE)
*10. DAVID FRICK
*11. ANTHONY DUCKETT MILITANT
*12. RONNIE DUCKETT MILITANT
13. ROBERT JETER
*14. EDDIE WARD

ROCK HILL UNION ORGANIZERS
EDDIE REEVES
RAY RENFROW
? BUMPER
EDDIE NICHOLS AMALGAMATED TEXTILE UNION

This memorandum contained not only the information given by Mr. Love to Mr. Dowd during the telephone call, but also included four names, Eddie Reaves, Ray Renfrow, ? Bumper, and Eddie Nichols, which Dowd had received from Love in a previous meeting when the two had discussed union policies, union methodology, etc., in the area of their operations.

Most of the fourteen people listed on the first part of the memorandum had made one or more applications to Webb Forging for employment after they had been laid

1. The asterisks were not on the memorandum prepared by Mr. Dowd, but have been added to identify the eleven persons out of the group of fourteen who became plaintiffs.

420

off by the Appellant. Dowd testified without contradiction at trial that at the time of his telephone conversation with Love, and for some time thereafter, he had approximately 2500 applications for employment in his files, with less than 100 places to be filled initially, but that his method of selecting employees was to act on the recommendation of persons in the community in whom he had trust, and on the recommendations of current employees of Webb Forging. Upon receiving such a recommendation, he would then interview the individual, and, if necessary, would request that the individual fill out an application form for employment. If he found the recommended individual's application in the file, he did not require a new application.

Dowd testified that the "confidential information" memorandum, *supra*, was placed in his desk, and remained there for some eighteen months until a security guard saw the list on Dowd's desk, recognized at least two names on the list, made a photocopy of the list, and gave that photocopy to one of the plaintiffs, Austin, who was the nephew of the security guard.

Thereafter, Austin filed suit against the Appellant, and the attendant publicity alerted the other ten plaintiffs to the fact that their names also were contained on the list. The remaining ten plaintiffs then each brought suit and the matter came on for trial. Two of those mentioned on the list who became plaintiffs, Robin Caldwell and David Frick, did not apply for employment with Webb during the period involved in the case.

II. *Discussion*

■ The standard for appellate review of a judgment below, on appeal of denial of a motion for judgment notwithstanding the verdict, or in the alternative for a new trial, is whether there is evidence upon which a jury could properly find a verdict, *Ralston Purina Co. v. Edmunds*, 241 F.2d 164, 167 (4th Cir.1957). Appellate review is not to weigh the contrasting evidence, not to judge credibility of witnesses, and not to substitute the reviewer's judgment of the

facts for that of the jury. *See Whalen v. Roanoke County Board of Supervisors*, 769 F.2d 221 (4th Cir.1985) (rev'd *en banc* on other grounds).

Against this standard, an old case, still followed, holds that a "scintilla" of evidence is not enough to sustain a verdict, *Schuylkill and Dauphin Improvement Co. v. Munson*, 81 U.S. (14 Wall) 442, 448, 20 L.Ed. 867 (1871), and case law further provides that any inferences drawn by the jury must be "reasonably probable;" mere speculation is insufficient. *Lovelace v. Sherwin-Williams, Co.*, 681 F.2d 230, 241–42 (4th Cir.1982).

Applying these requirements to the evidence below, as adduced in the Joint Appendix and the Supplemental Appendix, we address first the issue of blacklisting, and second the issue of slander, noting, as set out more fully *infra*, that the law of South Carolina actively invokes the concept of malice under both issues.

■ As a preliminary to consideration of the first issue, the point is made in Appellees' brief that no objection was made in the court below to the charge given the jury on the question of blacklisting. This court ordinarily does not address here objections not timely and properly saved in the trial below. An exception to this rule is that which requires the reviewing court to consider an error of law which adversely affects the substantive rights of the appellant. As this court has said, "There are instances, however, when issues not previously raised should be entertained on appeal. If the error is 'plain' and a refusal to treat it would result in a denial of fundamental justice, it should be decided." *See United States v. Barge Shamrock*, 635 F.2d 1108, 1111 (4th Cir.1980). Further, "Indeed, if deemed necessary to reach the correct result, an appellate court may *sua sponte* consider points not presented to the district court and not even raised on appeal by any party." *See Ricard v. Birch*, 529 F.2d 214, 216 (4th Cir.1975), *quoting* from *Washington Gas Light v. Virginia Electric and Power Co.*, 438 F.2d 248 (4th Cir.1971). Here, Appellant's contention is

that the court below recognized as a tort cognizable under South Carolina law the act of blacklisting, which recognition severely affected adversely the Appellant on this issue. If there is in fact no such tort recognized under South Carolina law, and if the charge of the court did recognize blacklisting as a tort, then there has been a plain error of law which has, in light of the verdicts, severely affected adversely the rights of the Appellant. Thus, we examine the case to determine answers to these questions.

### A. *Blacklisting as a tort:*

■ There is sharp controversy between the parties as to whether South Carolina in fact recognizes "blacklisting" as a cause of action separate and distinguishable from the tort of slander. From the case law the act of blacklisting in itself is not considered to be a tort under the law of South Carolina. *Rhodes v. Granby Cotton Mills,* 87 S.C. 18, 68 S.E. 824 (1910). In *Parker v. Southeastern Haulers,* 210 S.C. 18, 41 S.E.2d 387 (1947), the court said that, "the majority of an able court [in *Granby* ] held that the blacklist was not illegal *per se* ...." 210 S.C. at 28, 41 S.E.2d at 391, 392. Under both *Granby* and *Parker,* South Carolina law requires that, in order for blacklisting to constitute a tort, there must be some willful or malicious use of the blacklist, by one or a combination of the parties who prepared and used the blacklist, which willful or malicious use results in injury to the plaintiff. Thus, under these cases, the simple act of blacklisting is not a tort in South Carolina. Rather, to effectuate a recovery under a blacklisting theory, the plaintiff must prove that there was a blacklist, a combination of employers who exchanged the information contained on the blacklist, and a willful or malicious use of that blacklist by one or more of the members of the combination, with resultant injury to the plaintiff. *See supra, Granby,* 87 S.C. at 42–44, 68 S.E. at 833–4 (Woods, J., concurring).

No controversy exists about the fact that the two employers, speaking through Dowd and Love, did in fact exchange information concerning plaintiffs below which represented a "blacklisting" of those individuals. To the extent that Dowd accepted additional information about other former employees in addition to Glaser, as proffered by Love, that exchange of information covered all of the persons on the "confidential information" memorandum as set out and discussed *supra.*

The next question to be addressed, then, is whether the evidence below can sustain a finding of willful or malicious use of that blacklist with resultant injuries to the plaintiffs. First, the evidence at trial indicates that Dowd did not use the list's information at all. His testimony is that the list was never used by him in any way in evaluating any potential employee of Webb Forging. However, there is evidence that the blacklist was seen on Dowd's desk on one or more occasions, most particularly when the security guard saw the list on Dowd's desk and made a photocopy. If the jury chose to believe the testimony of the security guard and others that the list was seen on Dowd's desk, it would have weakened Dowd's testimony that he never referred to the list. However, it appears from the oral argument, the briefs, and the joint appendix that the plaintiffs do not assert a willful or malicious motive on Dowd's part in making the list. Rather, plaintiffs focus on Love; they assert that there was ample evidence from which the jury could have concluded that Love's giving of the information was done maliciously with the intent to hurt the plaintiffs. This was, of course, strenuously denied by Love throughout his testimony at trial. Love testified that the communication of such information is a regular and permissible activity among personnel managers of various employers.

Of some importance, there is a factual distinction between the facts in this case and those in *Granby, supra.* In *Granby,* the plaintiff had been mistakenly placed on a list of strikers which had been exchanged with other employers. It was conceded that the plaintiff had not been a striker at all. Nevertheless, his name had been re-

tained on the list of strikers even after the listing employer had known that the plaintiff was not a striker. Under these facts, a finding that there was some willful or malicious motive activating the employer in keeping the plaintiff's name on the striker list is an understandable, and defensible, conclusion.

■ In the present appeal, however, the evidence advanced to support a finding of malicious conduct in connection with the blacklist presents a far different picture. Appellees advance three propositions in attempting to prove a willful or malicious motive by Love: first, of his own volition Love volunteered the information concerning the plaintiffs, except for Charles Glaser; second, the information was in derogation of the plaintiffs' suitability for employment with Webb Forging; third, the information was false.

■ Given the proposition that blacklisting is not illegal *per se*, we cannot see how the three assertions above can be said, in and of themselves, to prove malice by Love. As the Court noted in the *Granby* opinion, Love's giving such information to Dowd in the context of their mutual interests in the employment process is allowable under South Carolina law. In a broader context, where such information is exchanged because of a mutual interest in its content, and without malice, penalizing that exchange would be a grave disservice to the employer. Certainly, the prospective employer seeks to acquire information judged pertinent by it to facilitate decision as to employment *vel non*. The former employer is a source of such information, and perhaps the only source. Proscribing such an interchange would severely inhibit the right of employers to communicate on a matter of serious, mutual concern. It appears that this reasoning underlies the decision of the Court expressed in Judge Woods' concurring opinion in *Granby, supra,* and this Court finds that reasoning strongly persuasive as it is applied in the South Carolina law.

The fact that Love proffered the information as to all plaintiffs, except Glaser, without specific inquiry by Dowd loses significance in light of the fact that Dowd initiated the exchange by inquiring about the reinstatement rights of former employees of Torrington. Glaser's application precipitated the inquiry, but the answer to the question as to Torrington reinstatement policy was obviously general in application to all former employees. In the context of that generalized inquiry and response, discussion of employees other than Glaser flowed as a natural consequence.

That the information exchanged between Love and Dowd related to and dealt with the suitability of the plaintiffs for employment is simply the function of such a list. Information normally found in such a list deals with the question of suitability of employment.

■ Whether the information on the list was or was not false is, in the context of the factual pattern here, more a function of subjective opinion than refutable fact. Nothing in the evidence from trial indicates that the falsity, if any, of the information contained on the list was brought home to Love, except in one case. In that instance, a fellow employee of Judy Howard told Love that Howard was neither an organizer for NOW nor an organizer for ERA. Love apparently responded that he had information which was contrary to that statement and he apparently relied upon that contrary information in his phone conversation with Mr. Dowd. We have already indicated that blacklisting is not illegal *per se* under South Carolina law. Given this, the subjective opinions of a person making a blacklist do not, in and of themselves, establish malice or a wanton desire to hurt the persons on the list. No information concerning the possible falsity of any of the statements is brought home to Love, except in the case of Howard. In that one case, the mere existence of conflicting information falls far short of establishing on the part of Love malice [2] with respect to

---

2. As indicated in the discussion of the require-

ment of malice, *infra,* and of the qualifiedly

the information on the blacklist concerning her.

After a detailed review of the record, we can find no evidence upon which the plaintiffs could have relied in asserting proof of malice. The three bases asserted by plaintiffs to support a finding of malice, i.e., volunteering information, derogatory information, and falsity of the information, if assumed to be true, do not present as much as that "scintilla" of evidence, under the facts in this case. South Carolina's concept of the necessary "scintilla of evidence" describes it as evidence which must be "real, material, and pertinent and relevant evidence, not speculative and theoretical deductions." *See Turner v. American Motorists Ins. Co.*, 176 S.C. 260, 264, 180 S.E. 55, 57 (1935). More than that "scintilla" of evidence is required to permit the conclusion that the inference drawn here by the jury was "reasonably probable," and not the product of speculation. The record, simply put, does not disclose evidence relating to these three factors that can support the *quantum* leap from the three factors to establishing the required willful or malicious misconduct "—malice in fact—" on the part of Love. For a discussion of factors *held* insufficient to establish malice in fact, though much stronger factors favoring the plaintiff than those in the case at bar, *see Bell v. Bank of Abbeville*, 211 S.C. 167, 44 S.E.2d 328 (1947) (second opinion).

### B. *Slander:*

Under the law of South Carolina, an action for slander requires that the challenged statement be both defamatory and actionable. A defamatory statement is a statement which tends to impeach the plaintiff's reputation. To be actionable, that statement must also injure the plaintiff. *Capps v. Watts*, 271 S.C. 276, 281, 246 S.E.2d 606, 609 (1978).

Where a statement is defamatory *per se,* it is actionable without any proof of special damages.[3] Where the defamatory statement is not defamatory *per se*, there must be proof of special damages. *Capps, supra*, 246 S.E.2d at 611. Where special damages are required, in the case of a defamatory statement which is not defamatory *per se*, those special damages must be a loss of money or some other loss capable of being assessed at a monetary value. *Smith v. Phoenix Furniture Co.*, 339 F.Supp. 969, 971 (D.S.C.1972).

Here, the district court below held that the entire conversation between Love and Dowd bore a qualified privilege, because of the serious, common interests held by Love and Dowd. The status of the challenged statements as qualifiedly privileged, while not conceded by the appellees, is nonetheless cursorily treated in their brief, asserting now that because Love spoke of other employees than Glaser, Love went beyond the scope of the privilege, so that the protection of qualified privilege was lost.

██ The court below charged the jury on this point in the following language:

I charge you that the qualified privilege is applicable to this case and that the defendant is entitled to assert and rely upon this defense. The effect of the qualified privilege defense is to cast upon the plaintiffs the burden of proving mal-

---

privileged nature of the communication, also discussed *infra*, the malice must be "express or actual" malice, sometimes referred to as "malice in fact," that is, that Love was "actuated by ill will in what he did and said, with the design to causelessly and wantonly injure" the plaintiffs. *See Bell v. Bank of Abbeville*, 208 S.C. 490, 495, 38 S.E.2d 641, 643 (1946).

**3.** A change in this aspect of the law of South Carolina may come about as a result of applying the doctrine of *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) and its progeny in a proper state case. However, no such change has been found in any reported South Carolina case. In fact, the latest South Carolina case dealing with this aspect of the law reiterates the principle set out in the text of this opinion, *see Capps, supra*, 246 S.E.2d at 609, the *Capps* opinion having been handed down some fourteen years after *New York Times v. Sullivan*. Thus, taking South Carolina law as it now stands, *Capps* affirms the principle presently followed in the reported South Carolina cases.

**424**

ice in fact on the part of the defendant by a preponderance of the evidence.... There was no objection below by the plaintiffs to this portion of the charge. Thus, under South Carolina law regarding qualified privilege, the plaintiffs had the heavier burden below of proving defamation, injury, *and malice in fact* on the part of Love, in order to prevail on their charges of slander. *Conwell v. Spur Oil Co.*, 240 S.C. 170, 181, 125 S.E.2d 270, 276 (1962). There is no dispute among the parties that Mr. Love and Mr. Dowd had a common interest, each serving as a personnel manager for an employer in the same community, and from these facts the court below concluded that a qualified privilege existed. The conclusion is clear, and substantially not disputed that the substance of Love's comments to Dowd was that Love could not recommend plaintiffs for employment. It is on this substance that the appellees attempt to engraft malice in fact.

Some consideration of just what was recorded on the memorandum as to the plaintiffs is in order here. As to Glaser, the comment is "17 yrs. (NO)"; as to Howard, "organizer (NOW) & ERA"; as to Austin, "Emotional Problem (male)"; as to A. Duckett and R. Duckett, "militant"; as to McAbee, Brown, Caldwell, Hill, Frick, and Ward, there are no comments of any sort.

Thus, as to the six plaintiffs for whom no comment is made, there is simply no slanderous statement to be found, unless the plaintiffs would have the Court adopt some scheme which would embrace all plaintiffs in a sort of umbrella theory.

 Even if this Court were willing to do so, consideration of the comments made as to the five plaintiffs fails to show the required degree of injury which impeaches the particular plaintiff's reputation. As to Glaser, the comment is "17 yrs. (No)". Taken under all the facts here, the statement is Love's statement that he would not recommend hiring Glaser. We cannot see how more can be read into this comment. As to Judy Howard, the comment is "Organizer (NOW) & ERA". It is doubtful that there ever was a day when

being stated to be an organizer for the National Organization of Women and the Equal Rights Amendment was considered a slander, but certainly that would scarcely be considered the case today or at the time of trial below. As to Austin, the comment is "Emotional Problem (male)." The statement is obviously one of the opinion of Love, but, again, the language used does not "tend to impeach the reputation of the plaintiff." *See, Capps v. Watts*, 271 S.C. 276, 281, 246 S.E.2d 606, 609. As to "emotional problem," aside from the matter of expressing an opinion, these words, without more, identify nothing of the nature of whatever problems there might have been, but leave the reader to speculate according to the individual's predilections to assign some further meaning to these words. It is impossible to assign any slanderous meaning to the identification of Austin as "(male)". As to A. Duckett and R. Duckett, the comment is "Militant" as to both. Again, Love expresses an opinion, but there is perhaps more comfort to be drawn by these plaintiffs from that description than there are adverse inferences. In the context in which the notes were made, the description may be intended to indicate strong pro-employee feelings and actions, but, as in all the above analyses of these comments, the most important consideration is that each of the descriptions is given in the framework of qualified privilege, and here, as in the previous comments noted, the statement is intended to convey to Dowd information he could consider in his hiring decisions.

In the fact pattern in this case, and in light of the qualified privilege attaching to the communication, the evidence will not support a finding of slander.

 If we assume, however, that this information went beyond a simple statement of non-recommendation for employment, and the memorandum taken as a whole was thus defamatory as to each name listed thereon, the plaintiffs still face the burden of proving actual malice. An *inference* of malice is not sufficient where the statements are found to be qualifiedly

privileged, as was the case below. *See Woodward v. South Carolina Farm Bureau Insurance Co.*, 277 S.C. 29, 282 S.E.2d 599 (1981).

The opinion in *Padgett v. Sun News*, 278 S.C. 26, 292 S.E.2d 30 (1982) sets out the following definition of "actual malice," as that term is understood in the law of South Carolina. It requires that the defendant acted "with ill will toward the plaintiff or that [he] acted recklessly or wantonly, meaning with conscious indifference toward plaintiff's rights", and requires that "at the time of his act or omission to act the tortfeasor be conscious, or chargeable with consciousness of his wrongdoing." *Rogers v. Florence Printing Co.*, 233 S.C. 567, 577, 106 S.E.2d 258; *Jones v. Garner*, 250 S.C. 479, 158 S.E.2d 909.

*Sun News*, 292 S.E.2d at 34.

No evidence of record supports the proposition that Love at the time of transmitting the challenged statements to Dowd was "at the time of his act or omission to act [was] conscious or chargeable with consciousness of his wrongdoing." As illustrated in the discussion of the South Carolina law governing blacklisting and intentional, improper interferences, etc., Love acted in a way which did not give rise to a tort action under these theories. Certainly, nothing in the evidence showed that Love was "conscious" of any wrongdoing.

It should be noted, also, that under the "actual malice" formulation of *Sun News*, *supra*, ill will and consciousness of wrongdoing are conjunctive, so that each element must be supported by more than a "scintilla" of evidence before "actual malice" can be found.

We conclude that, as a matter of law, there was a failure in the evidence below to demonstrate actual malice. Four of the plaintiffs testified below that they "got along fine" with Love. Appellees suggest in their brief that there is only evidence of actual malice toward one of the plaintiffs, Nancy Brown. However, Mrs. Brown's own testimony itself belies this argument. She stated at trial that there

had been some sharp words between her and Mr. Love some two years or more before the blacklisting incident. This is the only evidence advanced to show malice in fact on Love's part toward Nancy Brown. In contrast, the recitation of facts suggesting actual malice in *Bell v. Bank of Abbeville, supra* (second opinion), shows a series of incidents, far severer than those revealed as to Nancy Brown, which series of incidents was not enough to provide that necessary "scintilla of evidence." Further, Nancy Brown testified that after the incident relied on she had continued to work under Love's supervision and her relationship with him after the incident complained of had been very good. She did not deny Love's testimony to the effect that he had evaluated her for the highest possible wage increases in the intervening two years, and she believed Love was sorry that she was discharged during the reduction in the Torrington Co. work force. Taking the Brown testimony as a whole, that testimony is, if possible, less than the "scintilla" of evidence discussed *supra*. Certainly it is not sufficient, as a matter of law, to support a finding that malice in fact on the part of Mr. Love existed at the time the memorandum was prepared.

Similarly, plaintiffs' argument that malice on Love's part as to plaintiff Howard could be *inferred* from certain facts fails, since, given a qualified privilege, there must be proof of *malice in fact*.

If plaintiffs rely entirely on the Brown incident between Mr. Love and Ms. Brown, as apparently they must, for their proof of actual malice, then, as a matter of law, this evidence does not establish Love's ill will toward Ms. Brown, and that he acted recklessly or wantonly with a conscious indifference toward her rights, and was conscious, or chargeable with consciousness of his wrongdoing.

We thus conclude that the statements in question were qualifiedly privileged, there was no proof at trial of actual malice on the part of Love, and thus the verdict of the jury on the slander count of the complaint was not supported by the evidence.

### III. *Conclusion*

Because we have found that the verdicts of the jury on the blacklisting and slander counts cannot stand, it is not necessary to address the issues relating to damages, as those issues have been asserted on appeal.

For the reasons indicated above, the decision of the court below in denying a directed verdict is reversed, and the case is remanded with directions to enter judgment for the defendant.

REVERSED AND REMANDED.